### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.

RLI INSURANCE COMPANY,

                Plaintiff,

v.

DESIMONE CONSULTING ENGINEERS, LLC;
RAQUEL AZEVEDO DE OLIVEIRA, AS THE
PERSONAL REPRESENTATIVE OF THE ESTATES OF
ALFREDO LEONE AND LORENZO DE OLIVEIRA LEONE
AND PURPORTED REPRESENATATIVE OF THE LIABILITY CLASS
AND PERSONAL INJURY AND WRONGFUL DEATH SUBCLASS;
KEVIN SPIEGEL, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF JUDITH SPIEGEL AND PURPORTED
REPRESENTATIVE OF THE LIABILITY CLASS AND
PERSONAL INJURY AND WRONGFUL DEATH SUBCLASS;
KEVIN FANG, AS THE PERSONAL REPRESENTATIVE
OF THE ESTATE OF STACIE FANG AND PURPORTED
REPRESENTATIVE OF THE LIABILITY CLASS
AND THE NON-OWNER PERSONAL INJURY AND
WRONGFUL DEATH SUBCLASS; RAYSA RODRIGUEZ, INDIVIDUALLY,
AND AS PURPORTED REPRESENTATIVE OF THE LIABILITY
CLASS AND THE ECONOMIC LOSS AND PROPERTY DAMAGE SUBCLASS;
AND STEVE ROSENTHAL, INDIVIDUALLY, AND AS PURPORTED
REPRESENTATIVE OF THE ECONOMIC CLASS AND PROPERTY DAMAGE
SUBCLASS,

                Defendants.

_____/

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff RLI Insurance Company ("RLI") seeks declaratory judgment that RLI owes no duty to defend or indemnify DeSimone Consulting Engineers, LLC ("DeSimone Consulting Engineers, LLC" and/or "DeSimone"), for claims and damages alleged in an underlying consolidated putative class action lawsuit brought against DeSimone and numerous other parties. As grounds therefore, RLI states:

**<u>Jurisdiction, Parties and Venue</u>**

1.     This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2.     At all times material to this action, Plaintiff RLI was a foreign surplus lines insurer incorporated in Illinois with its principal place of business in Illinois.

3.     At all times material to this action, Defendant DeSimone was a limited liability company organized in Delaware whose managing member, Stephen V. DeSimone, was a citizen of Florida. No members of DeSimone are citizens of Illinois.

4.     At all times material to this action, Defendant Raquel Azevedo de Oliveira ("de Oliveira"), as the Personal Representative of the Estates of Alfredo Leone and Lorenzo de Oliveira Leone, was a citizen of Florida, the state in which her deceased husband Alfredo Leone, and her deceased minor son, Lorenezo de Oliveira Leon, were citizens at the time of their death.

5.     At all times material to this action, Defendant Kevin Spiegel ("Spiegel"), individually, and as the Personal Representative of the Estate of Judith Spiegel, was a citizen of Florida, the state in which his deceased wife, Judith Spiegel, was a citizen at the time of her death.

6.     At all times material to this action, Defendant Kevin Fang ("Fang"), as the Personal Representative of the Estate of Stacie Fang, was a citizen of Florida, the state in which his deceased sister, Stacie Fang, was a citizen at the time of her death.

7.     At all times material to this action, Defendant Raysa Rodriguez ("Rodriguez") was a citizen of Florida.

8.      At all times material to this action, Defendant Steve Rosenthal ("Rosenthal") was a citizen of Florida.

9.      The Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10.      Though monetary damages are not sought in this declaratory judgment action, the RLI insurance policies at issue represent funds in excess of $75,000.

11.      This Court has personal jurisdiction over Defendants because they are either located in this judicial district, they have submitted to the jurisdiction of this Court, they conduct and transact business in this district and/or they conducted and transacted business during all times material to this action.

12.      Venue is proper in Miami-Dade County, Florida, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to RLI'S claims occurred in this district.

13.      One of the events giving rise to this action is that Defendants have filed a putative class action lawsuit against DeSimone and others styled *In re: Champlain Towers South Collapse Litigation*, case no. 2021 015089 CA 01, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami Dade County, Florida.[1]

---

[1] The trial court in the underlying *In re: Champlain Towers South Collapse Litigation* is proactively managing and expediting the course of litigation and is expected to rule on the issue of class certification by Spring of 2022. Should the underlying trial court certify a class (including each subclass), RLI will promptly notify the Court, and will supplement the record as needed, including amending this Complaint for Declaratory Judgment by interlineation if necessary, for the purpose of reinforcing that RLI would formally seek at such time a declaration against the Defendants in both their individual and representative capacities, on behalf of the class and each subclass.

3

## The Underlying Facts and Underlying Putative Class Action

14.     On or about November 16, 2021, de Oliveira, Spiegel, Fang, Rodriguez, and Rosenthal filed a Consolidated Second Amended Class Action Complaint, which is the underlying operative complaint ("Underlying Operative Complaint" and/or "Underlying Putative Class Action"). A true and accurate copy of the Underlying Operative Complaint is attached as Exhibit "**A**."

15.     The Underlying Operative Complaint names DeSimone Consulting Engineers, LLC as a defendant.

16.     The Underlying Operative Complaint defines the Liability Class as:

> All persons and entities located at, residing at, and/or owning units at the Champlain Towers South condominium building, located at 8777 Collins Avenue, Surfside, Florida 33154, at the time of Champlain Towers South's collapse on June 24, 2021.

Exhibit "**A**" at ¶ 307.

17.     The Underlying Operative Complaint defines the Personal Injury and Wrongful Death Subclass as:

> All persons who suffered personal injuries as a result of the collapse of the Champlain Towers South condominium building, located at 8777 Collins Avenue, Surfside, Florida 33154, on June 24, 2021, and the personal representatives, survivors, and beneficiaries of the estates of all persons killed as a result of the collapse.

Exhibit "**A**" at ¶ 308.

18.     The Underlying Operative Complaint defines the Non-Owner Personal Injury and Wrongful Death Subclass as:

> All persons who suffered personal injuries as a result of the collapse of the Champlain Towers South condominium building, located at 8777 Collins Avenue, Surfside, Florida 33154, on June 24, 2021, and the personal representatives, survivors, and beneficiaries of the estate of all persons killed as a result of the

4

collapse who held no legal ownership interest in any condominium located in the Champlain Towers South condominium building.

Exhibit "**A**" at ¶ 309.

19.     The Underlying Operative Complaint defines the Economic Loss and Property

Damage Subclass as:

> All persons and entities located at, residing at, and/or owning units at the Champlain Towers South condominium building, located at 8777 Collins Avenue, Surfside, Florida 33154, at the time of the Champlain Tower South's collapse on June 24, 2021, and that lost real property and/or personal property as a result of the damage to the structure or units at Champlain Towers South and the resulting collapse on June 24, 2021.

Exhibit "**A**" at ¶ 310.

20.     Defendant de Oliveira allegedly intends to ask the court in the Underlying Putative Class Action to appoint her as a representative of the Liability Class and the Personal Injury and Wrongful Death Subclass. Exhibit "**A**" at ¶ 8.

21.     Defendant Spiegel allegedly intends to ask the court in the Underlying Putative Class Action to appoint him as a representative of the Liability Class and the Personal Injury and Wrongful Death Subclass. Exhibit "**A**" at ¶ 9.

22.     Defendant Fang allegedly intends to ask the court in the Underlying Putative Class Action to appoint him as a representative of the Liability Class and the Non-Owner Personal Injury and Wrongful Death Subclass. Exhibit "**A**" at ¶ 10.

23.     Defendant Rodriguez allegedly intends to ask the court in the Underlying Putative Class Action to appoint him as a representative of the Liability Class and the Economic Loss and Property Damage Subclass. Exhibit "**A**" at ¶ 11.

24.     Defendant Rosenthal allegedly intends to ask the court in the Underlying Putative Class Action to appoint him as a representative of the Liability Class and the Economic Loss and Property Damage Subclass. Exhibit "**A**" at ¶ 12.

25.     The Underlying Operative Complaint alleges that DeSimone was hired, retained, or otherwise acting as the structural engineer on the construction project known as "Eighty-Seven Park," located at 8701 Collins, Avenue, Miami Beach, Florida.  Exhibit "**A**" at ¶ 19.

26.     The Underlying Operative Complaint alleges that Champlain Towers South Condominium Association, Inc. (the "Association") was a not-for-profit Florida corporation with its principal place of business in Miami-Dade County, Florida, located at 8777 Collins Avenue, Surfside, Florida. Exhibit "**A**" at ¶ 20.

27.     The Underlying Operative Complaint alleges that Champlain Towers South ("CTS") was a twelve-story condominium building situated at the southernmost border of Surfside, Florida, at 87th and Collins Avenue. Exhibit "**A**" at ¶ 26.

28.     The Underlying Operative Complaint alleges that on June 24, 2021, at approximately 1:38 a.m., a portion of CTS suffered a catastrophic failure and partial collapse, resulting in the death of multiple residents. Exhibit "**A**" at ¶ 27.

29.     The Underlying Operative Complaint alleges that Eighty-Seven Park, developed and constructed between 2015 and 2020, is a sprawling 18-story luxury condominium building. Exhibit "**A**" at ¶ 49.

30.     The Underlying Operative Complaint alleges that before beginning construction of Eighty-Seven Park, the applicable building codes required a geotechnical investigation. Exhibit **"A"** at ¶ 69.

31.     The Underlying Operative Complaint alleges that, in 2015, NV5, Inc. was retained to perform a geotechnical study and render the report that section 1803 of the Florida Building Code required. Exhibit "**A**" at ¶ 72.

32.     The Underlying Operative Complaint alleges that the NV5 Report cautioned DeSimone and others involved with Eighty-Seven Park that "all excavations should comply with Occupational Safety and Health Administration [('OSHA')] design and safety requirements." Exhibit "**A**" at ¶ 79.

33.     The Underlying Operative Complaint alleges that DeSimone and others knew or should have known that they were responsible for ensuring Eighty-Seven Park site preparation work—including but not limited to excavation, shoring, compaction, and dewatering—would preserve, rather than undermine, CTS's structural integrity. Exhibit "**A**" at ¶ 85.

34.     The Underlying Operative Complaint alleges that DeSimone and others allegedly chose to use driven sheet piles to develop Eighty-Seven Park even though "practically vibration free" options were available. Exhibit "**A**" at ¶¶ 95-96.

35.     The Underlying Operative Complaint alleges that DeSimone and others "did not perform any vibration monitoring for sheet pile installations at the east, west, or south perimeters of the project or for the interior sheet pile installations or removals." Exhibit "**A**" at ¶ 111.

36.     The Underlying Operative Complaint further alleges that even though DeSimone and others knew that the Eighty-Seven Park construction site was emitting dangerously high vibrations during vibratory sheet pile driving, and even though they knew neighbors had complained about the daily tremors and structural damage being done, DeSimone and others "never performed more than a cursory inspection of CTS following the vibratory sheet pile driving." Exhibit "**A**" at ¶ 144.

37.     The Underlying Operative Complaint alleges that DeSimone and others also allegedly "performed no vibration monitoring during site compaction procedures." Exhibit "**A**" at ¶ 155.

38.     The Underlying Operative Complaint alleges that, given the proximity of the Eighty-Seven Park project to CTS, DeSimone and others should have undertaken measures to closely monitor the underlying water table and CTS during the dewatering process. Exhibit "**A**" at ¶ 171.

39.     Count VII of the Underlying Operative Complaint alleges negligence against DeSimone in that, as the structural engineer on the Eighty-Seven Park project, DeSimone allegedly had a duty to ensure that all work, including all pile driving, dewatering, site compaction, and excavation work, was carried out safely and in a manner that did not damage or otherwise negatively impact the structural integrity of adjacent properties, namely CTS. Exhibit "**A**" at ¶ 422.

40.     Count VIII of the Underlying Operative Complaint alleges strict liability against DeSimone because, as the structural engineer on the Eighty-Seven Park project, DeSimone "was intimately involved in the performance and progress of the pile driving activities on the project and was extremely knowledgeable regarding the pile driving activities on site." Exhibit "**A**" at ¶ 438.

41.     The Underlying Operative Complaint further alleges in Count VIII that pile driving on the Eighty-Seven Park project, carried out under the supervision of DeSimone was inappropriate given the project's proximity to CTS, a highly populated condominium building. Exhibit "**A**" at ¶ 442.

**The DeSimone Contracts**

42.　　DeSimone was hired to provide structural engineering services for the Eighty-Seven Park project ("Eighty-Seven Park"). A copy of DeSimone's contract for professional structural engineering design services is attached as Exhibit "**B**."

43.　　DeSimone prepared the Record Set of structural engineering drawings for Eighty Seven Park. The Record Set of structural engineering drawings are attached as Exhibit "**C**."

**The RLI Insurance Policies**

44.　　RLI issued Commercial General Liability Policy number PSB0008821, effective from April 30, 2020, to April 30, 2021, under which DeSimone Consulting Engineering Group, LLC is a Named Insured on the Declarations (the "20-21 Primary Policy"). A certified copy of the 20-21 Primary Policy is attached as Exhibit "**D**."

45.　　RLI amended Commercial General Liability Policy number PSB0008821, effective December 31, 2020, to change the name of the Named Insured to DeSimone Consulting Engineering DPC. Exhibit "**D**," *PPK 2103 06 10*.

46.　　RLI issued a renewal Commercial General Liability Policy number PSB0008821, effective from April 30, 2021, to April 20, 2022, under which DeSimone Consulting Engineering DPC is a Named Insured on the Declarations (the "21-22 Primary Policy"). A certified copy of the 21-22 Primary Policy is attached as Exhibit "**E**."

47.　　The 20-21 Primary Policy and the 21-22 Primary Policy (collectively the "Primary Policies") share the same relevant policy forms and endorsements.

48.　　The Primary Policies do not identify the defendant in the Underlying Operative Complaint, DeSimone Consulting Engineers, LLC, as a Named Insured.  *See* Exhibits "**D**" and "**E**," *PPB 100 12 1*0, p. 1 of 2, *PPB 503 03 11*, p. 1.

9

49.     The insuring language under Section II – Liability states, in part:

***

**SECTION II – LIABILITY**

A.      **Coverages**

1.      **Business Liability**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in **Paragraph D. – Liability And Medical Expenses Limits Of Insurance** in **SECTION II - LIABILITY**; and

(2)     Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

***

Exhibits "**D**" and "**E**," *PPB 101 07 16*, Page 31 of 48.

50.     The Primary Policies contain the following definitions:

***

F.      **Liability And Medical Expenses Definitions**

***

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

10

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

**17.**     "Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

Exhibits "**D**" and "**E**," *PPB 101 07 16*, Pages 43-44 of 48.

51.     The Primary Policies are amended by the RLIPACK® for Design Professional Liability Enhancement endorsement that states, in part:

***

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM – SECTION II – LIABILITY AND SECTION III AS IT PERTAINS TO LIABILITY ONLY

***

**J.     Who Is An Insured – Unnamed Partnership Or Joint Venture**

**1.**     The last paragraph of **Section II C. Who Is An Insured** is deleted and replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations. However this limitation does not apply to your liability with respect to your conduct of the business of any current or past partnership or joint venture:

11

      **a.**    That is not shown as a Named Insured in the Declarations; and

      **b.**    In which you are a member or partner but only if:

          **(i)**    Each and every member or partner in that joint venture or partnership is not a construction contractor; and

          **(ii)**    The joint venture or partnership is not providing construction contracting services.

Exhibits "**D**" and "**E**," *PPB 316 11 13*, Page 4 of 7.

52.    The Primary Policies are amended by the RLIPack® for Design Professionals Professional Services Exclusion endorsement that states, in part:

***

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RLIPack® FOR DESIGN PROFESSIONALS
PROFESSIONAL SERVICES EXCLUSION**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM – SECTION II - LIABILITY

1.    **Section II B.1.j. Exclusions**, **Professional Services** is deleted and replaced by the following:

    **j.**    **Professional Services**

        "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any "professional services".

2.    The following is added to **Section II F. Liability and Medical Expenses Definitions**:

    "Professional services" means any service requiring specialized skill or training including but not limited to the following:

12

**a.** Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor, subcontractor or subconsultant;

**c.** Monitoring, testing, or sampling service necessary to perform any of the services included in a. or b. above.

***

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any "professional services".

***

Exhibits "**D**" and "**E**," *PPB 312 09 13*, Page 1 of 1.

53.    RLI issued a Commercial Excess Liability policy, policy number PSE0004386, effective from April 30, 2020, to April 30, 2021, under which DeSimone Consulting Engineering Group, LLC, is a Named Insured on the Declarations ("20-21 Excess Policy"). A certified copy of the 20-21 Excess Policy is attached as Exhibit "**F**."

54.    RLI amended the Commercial Excess Liability policy, policy number PSE0004386, effective December 31, 2020, to change the name of the Named Insured to DeSimone Consulting Engineering DPC. Exhibit "**F**," *PPK 2103 06 10*.

55.    RLI issued a renewal commercial excess liability policy, policy number PSE0004386, effective from April 30, 2021, to April 30, 2022, under which DeSimone

Consulting Engineering DPC is a Named Insured on the Declarations ("21-22 Excess Policy"). A certified copy of the 21-22 Excess Policy is attached as Exhibit "**G**."

56.     The 20-21 Excess Policy and the 21-22 Excess Policy (collectively the "Excess Policies") share the same relevant policy forms and endorsements.

57.     The Excess Policies do not identify the defendant in the Underlying Operative Complaint, DeSimone Consulting Engineers, LLC, as a Named Insured. *See* Exhibits "**F**" and "**G**," *PPU 100 09 19*, Page 1 of 1, *PPK 300 12 10*, Page 1.

58.     The Excess Policies contain, in part, the following Insuring Agreement:

**SECTION I – INSURING AGREEMENT**

**A.      Coverage**

> Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such occurrence; and (c) only if caused by an occurrence which takes place during the policy period and in the coverage territory as defined in the underlying insurance. If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

> This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, endorsements and limitations of and shall follow the underlying insurance in all respects.

Exhibits "**F**" and "**G**," *PPU 101 07 17*, Page 1 of 6.

***

59.     The Excess Policies contain the following provision regarding the defense of an insured:

14

\*\*\*

**B.     Defense And Expense Of Claims And Suits**

   1.     We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of this policy has been exhausted.

\*\*\*

Exhibits "**F**" and "**G**", *PPU 101 07 17*, Page 1 of 6.

   60.     The Excess Policies contain the following definitions:

**SECTION II – DEFINITIONS**

**A.     Ultimate net los**s means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.

   **Ultimate net loss** shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are included within the limit of insurance of the **underlying insurance** by the terms of that policy.

B.     **Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

\*\*\*

Exhibits "**F**" and "**G**," PPU 101 07 17, Page 2 of 6.

   61.     The Excess Policies are amended by the following RLIPack® for Design Professionals Professional Services Exclusion endorsements that state, in part:

\*\*\*

15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ
IT CAREFULLY.**

**RLIPack® FOR DESIGN PROFESSIONALS
PROFESSIONAL SERVICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**

This insurance does not apply to **ultimate net loss** arising out of the rendering or failure to render any **professional services**.

"Professional services" means any service requiring specialized skill or training including but not limited to the following:

**a.**     Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, permit application, payment request, manual or instruction;

**b.**     Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor, subcontractor or subconsultant;

**c.**     Monitoring, testing, or sampling service necessary to perform any of the services included in **a.** or **b.** above.

***

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any "professional services".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN
UNCHANGED.**

Exhibits "**F**" and "**G**", *PPU 302 03 20.*

16

***

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ
IT CAREFULLY.**

**RLIPack® FOR DESIGN PROFESSIONALS
PROFESSIONAL SERVICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**

This insurance does not apply to bodily injury, property damage, personal and
advertising injury, or medical payments arising out of the rendering or failure to
render any "Professional Services".

"Professional services" means any service requiring specialized skill or training
including but not limited to the following:

**a.**     Preparing, approving, or failing to prepare or approve any map, shop
drawing, opinion, report, survey, field order, change order, design,
drawing, specification, recommendation, permit application, payment
request, manual or instruction;

**b.**     Supervision, inspection, quality control, architectural, engineering or
surveying activity or service, job site safety, warning or failure to warn,
construction contracting, construction administration, construction
management, computer consulting or design, software development or
programming service, or selection of a contractor, subcontractor or
subconsultant;

**c.**     Monitoring, testing, or sampling service necessary to perform any of the
services included in **a.** or **b.** above.

***

This exclusion applies even if the claims allege negligence or other wrongdoing in
the supervision, hiring, employment, training or monitoring of others by an
insured, if the "occurrence" which caused the "bodily injury" or "property
damage", or the offense which caused the "personal and advertising injury",
involved the rendering or failure to render of any "professional services".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN
UNCHANGED.**

17

Exhibits "**F**" and "**G**," *PPU 302 08 17*.

***

**COUNT I**
**DESIMONE CONSULTING ENGINEERS, LLC IS NOT AN INSURED UNDER THE**
**PRIMARY POLICIES**

62.     RLI re-alleges and re-incorporates all allegations above.

63.     The Primary Policies do not insure DeSimone Consulting Engineers, LLC.

64.     DeSimone Consulting Engineers, LLC is not a named insured, an additional insured or otherwise insured under the Primary Policies.

65.     Accordingly, RLI has no duty to defend or indemnify DeSimone based on the allegations in the Underlying Operative Complaint under the Primary Polices.

**COUNT II**
**THE PROFESSIONAL SERVICES EXCLUSION IN THE PRIMARY POLICIES**
**PRECLUDES COVERAGE**

66.     RLI re-alleges and re-incorporates all allegations above.

67.     The Underlying Operative Complaint alleges that DeSimone was negligent in performing its "professional services," as defined in the Professional Services Exclusion endorsement in the Primary Policies.

68.     The Underlying Operative Complaint also alleges that DeSimone was strictly liable in its failure to carry out its "professional services" regarding the pile driving carried out at the Eighty-Seven Park project, as defined in the Professional Services Exclusion endorsement in the Primary Policies.

69.     Even if DeSimone Consulting Engineers, LLC qualifies as an insured, the Professional Services Exclusion in the Primary Policies applies to exclude coverage.

18

70.     Accordingly, RLI has no duty to defend or indemnify DeSimone based on the allegations in the Underlying Operative Complaint under the Primary Polices.

## COUNT III
## DESIMONE CONSULTING ENGINEERS, LLC IS NOT AN INSURED UNDER THE EXCESS POLICIES

71.     RLI re-alleges and re-incorporates all allegations above.

72.     The Excess Policies do not insure DeSimone Consulting Engineers, LLC.

73.     DeSimone Consulting Engineers, LLC is not a named insured, additional insured or otherwise insured under the Excess Policies.

74.     Accordingly, RLI has no duty to defend or indemnify DeSimone based on the allegations in the Underlying Operative Complaint under the Excess Polices.

## COUNT IV
## THE PROFESSIONAL SERVICES EXCLUSIONS IN THE EXCESS POLICIES PRECLUDE COVERAGE

75.     RLI re-alleges and re-incorporates all allegations above.

76.     The Underlying Operative Complaint alleges that DeSimone was negligent in performing its "professional services," as defined in the Professional Services Exclusion endorsements in the Excess Policies.

77.     The Underlying Operative Complaint also alleges that DeSimone was strictly liable in its failure to carry out its "professional services" regarding the pile driving carried out at the Eighty-Seven Park project, as defined in the Professional Services Exclusion endorsements in the Excess Policies.

78.     Even if DeSimone Consulting Engineering, LLC is an insured, the Professional Services Exclusions in the Excess Policies apply to exclude coverage.

19

79.     RLI has no duty to defend or indemnify DeSimone based on the allegations in the Underlying Operative Complaint under the Excess Polices.

**<u>RELIEF SOUGHT</u>**

WHEREFORE, RLI requests that this Honorable Court enter a judgment declaring and adjudicating that DeSimone Consulting Engineers, LLC is not an insured, and, even if it is an insured, RLI has no duty to defend or indemnify DeSimone for any claims in the Underlying Operative Complaint under the Primary Policies or Excess Policies, and that RLI has no duty to defend DeSimone from or against any claims or suits arising out of the collapse of Champlain Towers South.

Dated: January 4, 2022.

Respectfully submitted,

/s/ Ryan K. Hilton
FAY E. RYAN, ESQ.
Florida Bar No.:  0965944
fryan@butler.legal
RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
rhilton@butler.legal
BUTLER WEIHMULLER KATZ CRAIG LLP
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:     (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for Plaintiff, RLI Insurance Company*