

**Stantec Architecture Inc.**
2 South Biscayne Boulevard
Miami FL 33131
Tel: (305) 482-8700
Fax: (305) 482-8770

21 January 2016

~~Vincent DeSimone~~ William O'Donnell
DeSimone Consulting Engineers
800 Brickell Avenue, 6th Floor
Miami, Florida 33131

Re: Consultant Letter of Acceptance and Consultant's Agreement
      8701 Collins Development, LLC
      Terra Group
      3050 Biscayne Boulevard, Suite 301
      Miami, Florida 33154

      87 Park
      8701 Collins Avenue
      Miami Beach, Florida 33154

      Project Number: 219420338
      *Note: Include ADD Inc's Project Number on all invoices*

Dear Mr. ~~DeSimone~~ - O'Donnell

We are pleased to collaborate with DeSimone Consulting Engineers on the condominium project located at 8701 Collins Avenue, Miami Beach, Florida. This letter confirms that your previous Proposal as accepted by Terra Group has been accepted, "Proposal". Proposal is for structural engineering services.

Stantec is providing architectural services to 8701 Collins Development, LLC for 87 Park and has entered into an Owner-Architect Agreement dated 28 August 2015. The Consultants Terms & Conditions, and the Proposal shall become the "Consultant's Agreement" for this Project. This Consultant Agreement replaces all previous agreements.

Per your proposal, you will provide the remaining structural services on a fixed fee basis of $202,065 with an additional $20,000 in approved Additional Services (foundation redesigns) as detailed in Exhibit A attached. You agree not to exceed the fixed fee without ADD Inc's prior written authorization. Any consultant fee billed will be credited towards the final fixed fee amount.

Please sign and this letter as your acceptance of this Consultant Agreement. Include a copy of your Certificate of Insurance, naming ADD Inc and the Owner as Additional Insureds and include all coverages.

Design with community in mind

**EXHIBIT**

**B**

 **Stantec**

Page 2 of 3

We look forward to working with you on this exciting project.

Sincerely,

Jonathan Cardello, AIA
Principal

~~Vincent DeSimone~~ William O'Donnell
DeSimone Consulting Engineers

Attachments:

Exhibit A – Schedule of Values
Consultant Terms & Conditions

Design with community in mind

DS-0036476

 **Stantec**

Page 3 of 3

## EXHIBIT A

| Billing Phase | Consulting Fee | Stantec Task # (Reference for Invoicing) |
|---|---|---|
| Construction Documents | $89,265 | 501.300 |
| Bidding and Negotiating | $18,800 | 501.400 |
| Construction Administration | $94,000 | 501.500 |
| Additional Service #01 | $20,000 | 501.600 |

*Include Project Number (219420338) and Task Number on all invoices.*

**Instructions for billing:**

1. Invoices should be submitted to Mercy Guasch at mercy.guasch@stantec.com
2. Include the following information on the email subject line:
   PROJECT NUMBER **219420338** followed by **8701 Collins Avenue**
3. Include the following information on each invoice or cover letter:
   a. Project phase being invoiced
   b. Approved total fee per phase
   c. Previously invoiced amount
   d. Current invoiced amount
   e. Correlating Stantec Task Number (as noted above)
4. Any questions, please contact the Haven Peaden at haven.peaden@stantec.com

Design with community in mind

 **Stantec**

Page 4 of 4

## EXHIBIT B – Applicable Sections of Owner-Architect Agreement
### 8701 Collins | 219420338
### Subconsultants
### Date: March 14, 2017

**8.3 REIMBURSABLE EXPENSES**

8.3.1 Subconsultants shall be **billed at the actual direct expense** incurred by the Sub consultant (without mark-up or multiplier) and supported by evidence of the amounts thereof as reasonably required by Owner. Reimbursable Expenses are in addition to compensation for Basic and Additional Services and shall include the following expenses, without limitation: transportation; reproductions; additional insurance coverage or limits, including professional liability insurance, requested by Owner in-excess of those limits specified in Article 10; and if authorized in advance by Owner, expense of overtime work requiring higher than regular rates.

**10.1 ARCHITECT'S LIABILITY INSURANCE**

<u>Summary of Insurance Requirements Listed in Section 10.1</u>

| | |
|---|---|
| Worker's Comp/Employers Liability | $1,000,000 |
| Commercial General Liability | $2,000,000 per occurrence |
| | $4,000,000 the general aggregate |
| Automobile Liability | $1,000,000 combined single limit for bodily injury and property damage coverage |
| Umbrella Liability | $5,000,000 per occurrence |
| | $5,000,000 in the annual aggregate excess of primary ins |
| | $10,000 max self-insured retention or deductible/occurrence |

10.1.4 Architect shall require all Subconsultants engaged or employed by or through Architect in connection with the performance of Services to carry and maintain the insurance set forth in Paragraph 10.1.1 above...

Subconsultants' professional liability insurance...
Professional Liability (Consultants)   $1,000,000 each claim
    $2,000,000 in annual aggregate
    $50,000 max self-insured retention or deductible/occurrence

$200,000
1000

DS-0036478

# DESIMONE

NEW YORK
MIAMI
SAN FRANCISCO
NEW HAVEN
LAS VEGAS
BOSTON
HONG KONG
ABU DHABI
COLOMBIA

April 16, 2015 (the "**Effective Date**")

**8701 Collins Development, LLC**
**Attn: Michael Piazza**
**2665 South Bayshore Drive Suite 1020**
**Miami, Florida 33133**

RE: Proposal (this "**Proposal**") for Structural Engineering Services for 8701 Collins Ave, Miami Beach, Florida

DeSimone Consulting Engineers, a Delaware limited liability company ("**Engineer**") hereby agrees to provide to 8701 Collins Development, LLC, a Delaware limited liability company ("**Owner**") the Services (as defined herein) for Owner's luxury condominium known as "8701 Collins," which consists of sixty-eight (68) residential condominium units, a pool, spa, gym, parking garage, and other related amenities (the "**Project**") located at 8701 Collins Avenue, Miami Beach, Florida 33154 (the "**Site**").

Engineer shall, at all times, coordinate its Services and Documents (as defined herein) with the services of and instruments of service prepared by Design Architect and Architect (both as defined in the Terms and Conditions).

## I.      ENGINEER'S SERVICES AND ENGINEER'S RESPONSIBILITIES

Engineer shall provide the Services to Owner in accordance with the Agreement and Owner's objectives for the complete structural engineering of the Project. Engineer's "**Services**" shall mean the complete structural engineering for the Project and other professional services furnished by Engineer or its Subconsultants (as defined in the Terms and Conditions), including the Basic Services (as defined herein) and any Additional Services (as defined in the Terms and Conditions) that may be required under Section 2.3 of the Terms and Conditions. Engineer's "**Basic Services**" consist of those professional engineering services described in this Proposal, the Terms and Conditions hereto, and shall include the following: (i) the complete structural engineering of the Project; (ii) the services described in each of the Phases (as defined and described herein); (iii) the preparation of the Documents and other documentation required in conjunction therewith for the structural engineering of the Project; (iv) those activities reasonably inferable as being a part of the Services; and (v) any other design activities normally or customarily furnished by structural engineers for similar projects under the Standard of Care (as defined in the Terms and Conditions). Engineer's "**Documents**" shall mean all documents and materials prepared by Engineer, and its Subconsultants in connection with the performance of the Services under the Agreement or which describe or relate to the Services performed or to be performed hereunder or the results thereof, including, without limitation, the Schematic Design Documents, Design Development Documents, the Construction Documents (each as defined in herein), all writings, drawings, specifications, plans, blueprints, pictures, recordings, computer or machine readable data, models, renderings, other design materials, reports, studies, documents, and all copies or reproductions thereof, and other tangible and intangible materials.

To the extent required by Owner in its pursuit of the best interest of the Project, Engineer shall engage with Owner, Design Architect, Architect and Contractor (as defined in the Terms and Conditions) in their value engineering analysis of the Project and design alternatives, and shall, with the written approval of Owner, incorporate any changes so identified in the design of the Project as part of the Basic Services, regardless of the origin of the value engineering proposed. The value engineering process shall be continuous throughout the Phases of the Basic Services. Engineer and its Subconsultants (as defined in

*MIA 184524626v3*

DS-0002041

the Terms and Conditions) shall update all Documents to include all value engineering items accepted by Owner.

Engineer shall provide advice, assistance and documentation requested by Owner with regard to Owner's efforts to obtain, and/or maintain, all Approvals of Governmental Authorities (both as defined in the Terms and Conditions). Upon receipt of written notice from Owner that the Services (or Documents) provided by, or through, Engineer do not conform to the requirements and/or representations set forth in the Agreement, Engineer shall (as part of the scope of the Services to be performed hereunder) expeditiously perform such corrective services as may be required to bring the Services (including the Documents) into conformance with the Agreement, all at no additional charge to Owner.

In addition, Engineer hereby acknowledges and agrees that Engineer and all of its Subconsultants have been paid in full for any and all services performed prior to the date of this Agreement for Owner and/or in connection with the Project, and represents and warrants that no sums are, or shall become, due and payable on account of any services performed in connection with the Project except as may be expressly provided in the Agreement. All payments made by Owner to Engineer prior to the Effective Date shall be deemed payments hereunder and shall be credited against and reduce Engineer's Fee. The Parties acknowledge and agree that if Engineer has provided any work or services for the Project prior to the Effective Date, then all such labor, materials and services shall be considered part of the scope of the Services hereunder and shall comply with, and conform to, the requirements of the Agreement.

Engineer is not responsible for any errors or omissions contained in the instruments of service prepared by consultants or design professionals contracted directly by Owner; however, Engineer shall be expected to review all such instruments of service carefully and to notify Owner immediately if Engineer observes, discovers or knows of any discrepancies, errors or omissions in such instruments of service that would render same unsuitable or unreliable for proper use as a basis for the Services and/or Documents to be provided by, or through, Engineer.

II.   **PHASES OF THE BASIC SERVICES**

Engineer shall perform its Basic Services in phases (each a "**Phase**," and collectively, the "**Phases**") as follows: (i) the Schematic Design Phase; (ii) the Design Development Phase; (iii) the Construction Documents Phase; (iv) the Bidding and Approval Phase; and (v) the Construction Administration Phase. Engineer shall not commence work on any Phase until Engineer receives from Owner written notice to proceed with such Phase. Engineer acknowledges that there may be, at times, some overlapping of the Basic Services performed by Engineer.

   A.   **SCHEMATIC DESIGN PHASE**

During the Schematic Design Phase, Engineer shall prepare schematic design documents that establish and provide for loading criteria, the preliminary design calculations to develop the basic structural load carrying system and detailing for the components of the Project, and preliminary column grids, column sizes, and lateral system component locations (the "**Schematic Design Documents**"). Additionally, Engineer shall consult with the geotechnical engineer for the Project to determine appropriate foundation systems, and attend design and coordination meetings with Owner, Design Architect, Architect, and/or Owner's other design professionals/consultants for the Project.

At all times during the Schematic Design Phase, Engineer shall coordinate its Services and Documents with the services performed, and instruments of service prepared, by Design Architect, Architect, and Owner's other design professionals/consultants. Notwithstanding anything contained herein to the contrary, Engineer acknowledges and agrees that changes to the Project may be required during the preparation of the Schematic Design Documents, and that Engineer shall execute such changes as part of its Basic Services.

*MIA 184524626v3*

DS-0002042

B. **DESIGN DEVELOPMENT PHASE**

Following approval of the Schematic Design Documents, Engineer will promptly begin the Design Development Phase. During the Design Development Phase, Engineer shall prepare, for Owner's approval, design development documents that include the layout of foundation system with major dimensions and sections, load calculations, typical details for the foundation and superstructure, CAD plans indicating primary gravity and lateral load member sizes (at a scale matching the instruments of service prepared by Architect), and detailed Project specifications (the '**Design Development Documents**"). Additionally, Engineer shall attend design and coordination meetings with Owner, Design Architect, Architect, and/or Owner's other design professionals/consultants for the Project. Engineer shall prepare the Design Development Documents in accordance with all Approvals and Governmental Requirements.

At all times during the Design Development Phase, Engineer shall coordinate its Services and Documents with the services performed, and instruments of service prepared, by Design Architect, Architect, and Owner's other design professionals/consultants. Notwithstanding anything contained herein to the contrary, Engineer acknowledges and agrees that changes to the Project may be required during the preparation of the Design Development Documents, and that Engineer shall execute such changes as part of its Basic Services.

C. **CONSTRUCTION DOCUMENTS PHASE**    elevated

Upon approval of the Design Development Documents, Engineer will promptly begin the Construction Documents Phase. During the Construction Documents Phase, Engineer shall prepare, for Owner's approval, construction documents that set forth in detail the structural requirements for the construction of the Project (the "**Construction Documents**"). Engineer's Construction Documents shall include, without limitation, final structural drawings and specifications, complete structural engineering calculations in support of the Construction Documents and in a form sufficient for submission to the building department, and the design for landscape Site walls and pool enclosures. Further, Engineer's Construction Documents shall be fully coordinated with the instruments of service of Design Architect, Architect and all other design professionals/consultants performing services for the Project. Engineer shall prepare the Construction Documents in accordance with all Approvals and Governmental Requirements. The Construction Documents shall be signed and sealed, as required by the Governmental Authorities.

Additionally, Engineer shall attend design and coordination meetings with Owner, Design Architect, Architect, and/or Owner's other design professionals/consultants for the Project. At all times during the Construction Documents Phase, Engineer shall coordinate its Services and Documents with the services performed, and instruments of service prepared, by Design Architect, Architect, and Owner's other design professionals/consultants. Notwithstanding anything contained herein to the contrary, Engineer acknowledges and agrees that changes to the Project may be required during the preparation of the Construction Documents, and that Engineer shall execute such changes as part of its Basic Services.

D. **BIDDING AND APPROVALS PHASE**

Upon approval of the Construction Documents, Engineer will promptly begin the Bidding and Approvals Phase. During the Bidding and Negotiating Phase, Engineer shall assist Owner in reviewing bid submissions and budgets for the construction of the Project and shall respond to requests for information (RFIs), clarifications as needed by bidders, and questions from the building department in a prompt manner and so as to not delay the performance of the Work or the services provided by Design Architect, Architect, or Owner's other design professionals/consultants.

E. **CONSTRUCTION ADMINISTRATION PHASE**

Engineer shall assist Owner in providing administration of the Construction Contract (as defined in the Terms and Conditions) as set forth below and in the Construction Contract. During the Construction Administration Phase, Engineer shall visit the Site with its Subconsultants to (1) become familiar with, and

DS-0002043

to keep Owner informed about, the progress and quality of the Work completed, (2) use its diligent, professional efforts to guard Owner against defects and deficiencies in the Work, and (3) determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Construction Documents. However, Engineer shall not be required to make exhaustive or continuous on-Site inspections to check the quality or quantity of the Work. Engineer shall keep Owner informed of the progress and quality of the Work, and shall promptly advise Owner of any defects and deficiencies in the Work discovered by Engineer. Engineer shall submit to Owner a written report subsequent to each such on-Site visit and shall participate in conference calls as often as necessary to review construction activities and respond to Contractor's questions regarding the Project, including questions regarding design issues and visit the Site as directed by Owner to monitor Contractor's workmanship. Additionally, Engineer shall prepare and deliver to Owner, on a weekly basis, a report describing the progress of the Work.

Engineer shall not have control over or charge of, and shall not be responsible for, construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work.

Engineer shall, at reasonable times, have reasonable access to the Work wherever it is in preparation or progress. In the sole discretion of Owner, Owner may require Engineer and Engineer's Subconsultants to come to the Site where Work may be disrupted or delayed by what appears to be insufficiency in design details or a failure to coordinate the design effort. The cost to Engineer (and its Subconsultants) is part of Basic Services and shall not be considered Additional Services herein. Engineer has no authority to make changes to approved Construction Documents, and shall not do so without Owner's written approval. Engineer shall reject Work that does not conform to the Construction Documents, Approvals, or Governmental Requirements. Owner reserves the right to communicate directly with Engineer's Subconsultants.

Engineer shall review and approve, or take other appropriate action upon, Contractor's submittals such as shop drawings, product data and samples, for the purpose of: (1) assuring compliance with Governmental Requirements and Approvals; (2) assuring that the Work affected and represented by such submittals is in compliance with the requirements of the Construction Documents; and (3) confirming that such shop drawings provide for a design product that is functionally usable for the original design intent and standards. For each such submittal, Engineer shall either (a) accept and approve such submittal, or (b) reject such submittal (with or without requirements for modifications). Engineer's action with regard to submittals shall be taken with such reasonable promptness so as to not cause delay in the Work or in the construction of Owner's own forces or of Owner's separate contractors, while allowing sufficient time to permit adequate review of the submittals, but in no event more than ~~three (3)~~ ten (10) business days after Engineer's receipt of the submittals.

Engineer shall review and respond to RFIs from Contractor. When applicable, Engineer shall prepare supplemental Documents, including drawings, details and specifications, in response to RFIs. Engineer shall respond to RFIs promptly as not to delay the Work or other aspects of construction of the Project, but in no event later than three (3) business days after Engineer's receipt of an RFI. Engineer shall have no authority to bind Owner or to accept or execute changes to the Construction Contract or any other contracts executed by Owner with regard to the Project.

Engineer shall review as-built information prepared by Contractor and complete reproducible as-built documents as described in this paragraph. Upon Substantial Completion (as defined in the Construction Contract) of the Work by Contractor, Engineer shall also prepare a set of reproducible record "as-built" Construction Documents, showing all changes in the Work made during construction, including those changes set forth on marked-up prints and other data furnished by Contractor to Owner, all of which shall be coordinated to a common CAD background for the Project for its instruments of service and all instruments of service developed by its Subconsultants and Contractors for the Project. All such changes shall be actually incorporated into a revised set of reproducible record "as-built" Construction Documents, rather than highlighted as notations with "clouding" or other markings. In other words, the as-built Construction Documents shall be prepared in such a manner so as to illustrate the actual, as-built

4

DS-0002044

conditions of the Work rather than comparing the Work as designed to the Work as constructed. In doing so, Engineer shall also provide the final, record "as-built" Construction Documents in electronic format (e.g., plot files on CD-ROM media). Engineer may, acting in a commercially reasonable manner, rely on information provided by others for the preparation of the record "as-built" Construction Documents and shall not be responsible for errors in such information, provided that Engineer exercises proper precautions relating to the review thereof (e.g., the coordination of that information with its records regarding changes, field orders, etc.).

### III.   SCHEDULE

Engineer at all times shall proceed diligently to complete the Services, including any authorized Additional Services, as expeditiously as is consistent with the Standard of Care and the orderly progress of such Services. Engineer shall at all times provide sufficient personnel to perform its Services in accordance with the Schedule of Performance attached hereto as **Exhibit "A."** Engineer's Services shall be performed in a timely manner so as not to cause any delay in starting construction of the Project. Engineer agrees to complete each portion or Phase of the Services on or before the deadlines established in the Schedule of Performance attached hereto as **Exhibit "A."** No act or default by Engineer and/or any other Subconsultants shall constitute a cause for delay or stoppage of Engineer's Services or for an extension of time to complete such Services.

Performance of the Services shall commence on the date provided for in **Exhibit "A,"** and shall continue until Engineer satisfactorily performs the Services, and Owner duly accepts the same as complete. Engineer acknowledges that TIME IS OF THE ESSENCE and that Owner's business interests may suffer substantial losses if the Services are not completed in a timely manner. In this regard, Engineer hereby accepts and confirms that the Schedule of Performance, including milestone dates, set forth in **Exhibit "A,"** is a reasonable time to complete the Services with professional skill and care and the Standard of Care. Owner and Engineer hereby acknowledge and agree that due to the nature and timing of the development of the Project, there may be extended periods of time between each Phase of the Basic Services and/or pauses in the schedule from time to time at Owner's election, in Owner's sole discretion, without effect on Engineer's Fee and/or other obligations herein.

### IV.   COMPENSATION FOR BASIC SERVICES

As consideration for Engineer's complete, proper and timely performance of the Basic Services, Owner shall pay Engineer Engineer's Fee (as defined in the Terms and Conditions) in the amount of Three Hundred Seventy-Six Thousand and 00/100 Dollars ($376,000.00), which is payable as follows:

| | |
|---|---|
| Schematic Design Phase | $ 37,600.00 |
| Design Development Phase | $ 75,200.00 |
| Construction Documents Phase | $ 150,400.00 |
| Bidding and Approvals Phase | $ 18,800.00 |
| Construction Administration Phase | $ 94,000.00 |
| **Total Engineer's Fee** | **$ 376,000.00** |

Engineer's Fee includes the costs of all Subconsultants necessary to furnish the Services.

5

DS-0002045

## V.    ENGINEER'S KEY PERSONNEL

Vincent J. DeSimone shall serve as Engineer's key personnel overseeing, and shall be primarily responsible for, the performance of the Services (the "**Key Personnel**"). Engineer shall supplement its support staff as required; provided, however, Engineer represents and warrants that it has the project capacity to commit to the Project and shall not take on any additional projects that would interfere with the ability of the Key Personnel to devote the time necessary to complete the Project and meet the Schedule of Performance. Engineer shall not change or reassign the Key Personnel without the prior written approval of Owner (unless requested by Owner), or unless any of the Key Personnel cease to be employed by Engineer.

## VI.    TERMS AND CONDITIONS

The Terms and Conditions attached hereto are an integral part of this Proposal and are incorporated herein by this reference.

## VII.    THE AGREEMENT

The term "**Agreement**" shall mean this Proposal (and all exhibits hereto) and the Terms and Conditions, all as attached hereto.

The Agreement may be executed in several counterparts, and/or by the execution of counterpart signature pages which may be attached to one or more counterparts of the Agreement, and all so executed shall constitute one Agreement binding on all of the Parties hereto, notwithstanding that all of the Parties are not signatories to the original or the same counterpart. In addition, any counterpart signature page may be executed by any Party wherever such Party is located, and may be delivered by telephone facsimile transmission or electronic mail, and any such facsimile or electronic mail transmitted signature pages may be attached to one or more counterparts of the Agreement, and such faxed or e-mailed signature(s) shall have the same force and effect, and be as binding, as if original signatures executed and delivered in person.

The Agreement represents the entire and integrated agreement between Owner and Engineer and supersedes all prior negotiations, representations, or agreements, either written or oral. The Agreement may be amended only by written instrument signed by both Owner and Engineer. If there is any inconsistency between this Proposal and the Terms and Conditions, then Engineer shall (i) provide the better quality or greater quantity of Services or (ii) comply with the more stringent requirement, in Owner's sole discretion. Capitalized terms in the Terms and Conditions not otherwise defined shall have the meanings ascribed to them in the Proposal.

**WHEREFORE,** Owner and Engineer hereby enter into the Agreement as of the Effective Date set forth above and agree to the terms and conditions set forth herein.

**ENGINEER:**                                      **OWNER:**

**DeSimone Consulting Engineers,** a Delaware        **8701 Collins Development, LLC,** a Delaware
limited liability company,                           limited liability company,

By: _____               By: _____
    Vincent J. DeSimone, its chairman                   David Martin, its

MIA 184524626v3

DS-0002046

## EXHIBIT "A"

### SCHEDULE OF PERFORMANCE

| | |
|---|---|
| Design Development Documents - 100% | April 30, 2015 |
| Construction Documents - 30% | May 21, 2015 |
| Construction Documents - 60% | June 18, 2015 |
| Construction Documents - 95% | July 24, 2015 |
| Construction Documents - 100% | August 22, 2015 |

A-1

DS-0002047

## EXHIBIT "B"

### ENGINEER'S HOURLY RATES

| | |
|---|---|
| Senior Principals | $405.00/ hour |
| Principals | $340.00/ hour |
| Senior Associate Principals | $310.00/ hour |
| Associate Principals | $305.00/ hour |
| Senior Associates | $280.00/ hour |
| Associates | $275.00/ hour |
| Field Operations Managers | $260.00/ hour |
| Senior Project Managers | $240.00/ hour |
| Project Managers | $230.00/ hour |
| Senior Project Engineers | $210.00/ hour |
| Project Engineers | $190.00/ hour |
| Engineers | $175.00/ hour |
| Construction Administration Managers | $210.00/ hour |
| Inspectors | $170.00/ hour |
| Engineering Computer Time | $0 |
| BIM/CAD Managers | $270.00/ hour |
| BIM Coordinators | $250.00/ hour |
| CAD Supervisors | $240.00/ hour |
| Senior Designers | $240.00/ hour |
| BIM Technicians | $220.00/ hour |
| Senior CAD Drafters | $210.00/ hour |
| CAD Drafters | $170.00/ hour |
| CAD/BIM Computer Time | $0 |
| Clerical | $0 |
| Principals - Court Time or Deposition Time | $545.00/ hour |

*MIA 184524626v3*

DS-0002048

## TERMS AND CONDITIONS

### Article 1 – Definitions

1.1 **Additional Services**. Professional services that may be provided in addition to Basic Services and rendered only if Owner authorizes them in writing, consistent with Section 2.3 of these Terms and Conditions.

1.2 **Approvals**. Any and all approvals, concessions, permits or other such authorizations required of third parties with regard to the Project, including any and all Governmental Authorities (as defined herein).

1.3 **Architect**. The architect of record for the Project retained by Owner to design the Project.

1.4 **Construction Contract**. The written agreement between Owner and Contractor (as defined herein) for the construction of the Project.

1.5 **Contractor**. The licensed general contractor retained by Owner to construct the Project.

1.6 **Days or Time**. Time periods refer to calendar days, unless otherwise stated.

1.7 **Design Architect**. The design architect retained by Owner to design the Project.

1.8 **Documents**. As defined in the Proposal.

1.9 **Effective Date**. As defined in the Proposal.

1.10 **Engineer**. As defined in the Proposal.

1.11 **Engineer's Fee**. Subject to the terms and conditions of the Agreement, the total compensation that Owner shall pay Engineer for the proper and timely performance of the Basic Services. Engineer's Fee includes any and all profits, costs and expenses payable to Engineer as a result of the Basic Services to be performed hereunder, all applicable sales taxes and other charges properly imposed by Governmental Authorities.

1.12 **Engineer's Representative**. Vincent J. DeSimone, who is the authorized representative of Engineer and has the express authority to bind Engineer with respect to all matters requiring Engineer's approval or authorization.

1.13 **Force Majeure Delays**. Delays in the performance/completion of Engineer's Services and obligations hereunder that are caused by acts of God, severe weather, such as a hurricane or tropical storm, or by strikes, lockouts, acts of public utilities or public bodies beyond the reasonable control of Engineer.

1.14 **Governmental Authority(ies)**. The United States of America, the State of Florida, the county and city, if any, wherein the Project is located, any political subdivision thereof, and any

other agency, authority, or court having jurisdiction over the Project, Engineer, Contractor, the Services or the Work.

1.15 **Governmental Requirements**. Any law, statute, rule, regulation, ordinance, code or lawful order of any Governmental Authority that is applicable to the Services, Engineer, the Work or the Project.

1.16 **Indemnitee(s)**: Owner, Owner's Representatives, the lender for the Project, and all of their respective officers, directors, partners, affiliates, partners, shareholders, managers, members, agents, and employees.

1.17 **Owner**. As defined in the Proposal.

1.18 **Owner's Representative**. Michael Piazza is an authorized representative of Owner and has the express authority to bind Owner with respect to all matters requiring Owner's approval or authorization.

1.19 **Parties**. Owner and Engineer are collectively referred to herein as the "Parties" and each, individually, as a "Party."

1.20 **Project**. As defined in the Proposal.

1.21 **Services**. As defined in the Proposal.

1.22 **Standard of Care**. The standard of care applicable to the provision of engineering services similar to those Services furnished by Engineer for comparable projects in Florida.

1.23 **Subconsultants**. The qualified, licensed design professionals retained by Engineer to furnish a portion of the Services described herein or other necessary design services for the Project, as well as all of Engineer's agents and other persons and entities working for, or through, Engineer, at all tiers.

1.24 **Work**. The entire construction of the Project, including without limitation, the furnishing and installation of all materials, furniture, fixtures and equipment to be incorporated into the Project.

### Article 2 – Engineer and Engineer's Services

2.1 **Engineer**. Engineer represents that it possesses the requisite skill, education, expertise, and licenses to perform the Services. Engineer represents that it is knowledgeable of all Governmental Requirements and Approvals and agrees to comply with and conform all Services and Documents to all Governmental Requirements and Approvals. If Engineer fails to perform its Services or prepare the Documents in accordance with Governmental Requirements or Approvals, then Engineer shall bear and be responsible to pay all costs, damages and expenses resulting therefrom.

2.2 **Services**. Engineer shall perform all of its Services in a proper and adequate manner and in accordance with the Standard of Care. As a material inducement for entering into the Agreement, Owner is relying upon Engineer's particular

*MIA 184524626v3*

1

DS-0002049

**TERMS AND CONDITIONS**

knowledge, experience, licensure and expertise, which Engineer has affirmatively represented to Owner that it has with respect to rendering the Services. Engineer shall at all times faithfully, industriously and to the best of the ability, experience and talents of Engineer and its employees and representatives, perform the Services required of and from it pursuant to the terms hereof, all to the reasonable satisfaction of Owner. Upon receipt of written notice from Owner that the Services (or Documents) provided by, or through, Engineer do not conform to the requirements of the Agreement, Engineer shall (as part of the scope of the Services) expeditiously perform such corrective services as may be required to bring the Services (including the Documents) into conformance with the Agreement, all at no additional charge to Owner. Owner may reduce the scope of Services, with or without cause, upon written notice to Engineer at any time, without the effect of terminating the Agreement or relieving Engineer of its obligations to perform the Services with respect to the other Services. In the event that Owner reduces the scope of the Services (i) Engineer's Fee shall be reduced accordingly in proportion to the reduced scope of Services, and (ii) Engineer shall immediately deliver to Owner all Documents prepared relating to the scope of Services that has been reduced. .

2.3     **Additional Services**. When approved, in writing, by Owner, Engineer shall provide services that are in addition to the Services provided hereunder. When Owner has approved Engineer's performance of Additional Services, all terms of the Agreement pertaining to the Services shall apply to such Additional Services, or deleted or modified Services, except as expressly provided otherwise by Owner in writing. Engineer shall promptly notify Owner in writing when Engineer deems it necessary or appropriate to perform any Additional Services, and such Additional Services shall be provided by Engineer only if such Additional Services and the cost thereof are authorized in writing by Owner, in its sole and absolute discretion, prior to Engineer commencing such Additional Services. If Engineer proceeds with any Additional Services prior to its receipt of Owner's express written approval of the request for Additional Services, Engineer shall be deemed to have waived any claim for an increase in the amount of compensation to be paid to Engineer pursuant to the Agreement with respect to such Additional Services. Payment for Additional Services shall be computed on either of the following bases (at Owner's election in Owner's sole discretion): (i) a time and expense basis measured by the hourly rates listed in **Exhibit "B"** (without mark-up), plus Reimbursable Expenses; or (ii) a lump sum basis subject to the Parties' prior written agreement. Payments for Engineer's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of Engineer's statement of Services rendered or expenses incurred, together with any supporting documentation reasonably requested by Owner.

2.4     **Independent Contractor**. Engineer is and shall perform its Services under the Agreement as an independent contractor, and shall not act as nor be deemed an agent, employee, partner, joint venturer or legal representative of Owner. Engineer has no authority to assume or create any commitment or obligation on behalf of Owner or bind Owner in any respect whatsoever.

2.5     **Coordination**. Engineer shall, in all aspects of its performance of the Services, coordinate with its Subconsultants, Design Architect, Architect, Owner, Owner's Representative and all other design professionals/consultants that Owner may engage to perform Work or services related to the Project, including Contractor. It is understood that Engineer is not responsible for any errors or omissions contained in the instruments of service prepared by consultants or design professionals contracted directly by Owner. It is also understood, however, that Engineer shall be expected to review all such instruments of service carefully and to notify Owner immediately if Engineer observes, discovers or knows of any discrepancies, errors or omissions in such instruments of service that would render same unsuitable or unreliable for proper use as a basis for the Services and/or Documents to be provided by, and through, Engineer. Engineer shall be responsible for the completeness and accuracy of all Documents submitted by, or through, Engineer and for their compliance with all Governmental Requirements and Approvals.

**Article 3 – Owner's Responsibilities**

3.1     **Information**. Owner shall provide to Engineer necessary information regarding requirements for the Project and the Services, (other than Governmental Requirements and Approvals, which are the sole responsibility of Engineer) and Owner's budgets, plans, schedules, constraints, criteria, and objectives for the Project.

3.2     **Surveys**. Owner shall furnish surveys fully describing physical characteristics, legal limitations, and utility locations for the Project.

3.3     **Owner's Engineers**. Owner shall furnish the services of other consultants, if required, when such services are reasonably required by the scope of the Project, in Owner's sole discretion, and are not otherwise to be provided as part of the Services.

3.4     **Tests**. Owner shall furnish structural, mechanical, chemical, air, and water pollution and hazardous materials tests, and other laboratory and environmental tests, inspections, and reports required by Governmental Requirements or Governmental Authorities.

3.5     **Owner's Services and Information**. Engineer shall be entitled to rely upon the accuracy and completeness of the services, information, surveys, and reports provided by Owner, Contractor, or any of their subcontractors or consultants, except that Engineer shall promptly review and verify such services, information, surveys, and reports and notify Owner of any error, inconsistency, or omission therein discovered by Engineer.

**Article 4 – Documents.**

4.1     **Ownership of Documents**. All Documents, including the Schematic Design Documents, the Design Development Documents and the Construction Documents, and all intellectual property rights, copyrights, rights of reproduction and other interests relating to, and in, the Documents, as well as the Documents as physical property, are and shall remain the property

2

DS-0002050

**TERMS AND CONDITIONS**

of Owner (and its affiliates), shall be considered "works made for hire" under 17 U.S.C. § 101, and shall be delivered to Owner, without charge, upon request. Engineer grants, assigns, transfers and forever conveys to Owner (and its affiliates) all rights, title and interests in the Documents, including, without limitation, moral rights. Owner (and its affiliates) shall be entitled to the exclusive use of all the Documents and no use thereof shall be made by Engineer for any purpose other than in connection with the Project. No articles, papers or treatises related to, or in any way associated with the Services performed pursuant to the Agreement shall be submitted for publication without the prior written consent of Owner. In those instances where a public agency or official requires information, Engineer may, with the prior written consent of Owner's Representative, provide such results or information as is necessary to perform the Services pursuant to the Agreement. The results of Engineer's Services under the Agreement, including the Documents, shall be the exclusive property of Owner and Engineer shall not disclose such results to any third party or use the same for the benefit of any third party other than Owner. Any re-use of the Documents by Owner for purposes other than the Project shall be at Owner's sole risk.

4.2    The provisions of this Article 4 shall survive completion of the Services, final payment hereunder or any earlier termination of the Agreement.

**Article 5 – Dispute Resolution**

5.1    **Litigation.** Any and all claims and disputes arising out of, relating to, or in any way connected with the Agreement, the Project or the Services shall be resolved by litigation in a court of competent jurisdiction. Owner and Engineer expressly consent to, and agree that, the exclusive jurisdiction and venue for any lawsuit arising out of, relating to, or in any way connected with the Agreement, shall be of the State and Federal Courts in and for Miami-Dade County, Florida, and Owner and Engineer waive any objection to such jurisdiction and venue.

5.2    **THE PARTIES HERETO EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EACH MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF EITHER PARTY TO THE AGREEMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR OWNER AND ENGINEER TO ENTER INTO THE AGREEMENT.**

5.3    **Prevailing Party Attorneys' Fees and Costs.** The prevailing Party in any lawsuit arising out of, relating to, or connected with, the Agreement, the Services, or the Project, shall be entitled to recover its reasonable attorneys' fees and costs, whether incurred before suit, during suit, during mediation, or at the appellate level. The prevailing Party shall also be entitled to recover all attorneys' fees and costs incurred in litigating entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs.

The reasonable costs to which the prevailing Party is entitled shall include costs that are taxable under any applicable statute, rule or guideline, as well as non-taxable costs, including, but not limited to, costs of investigation, copying costs, electronic discovery costs, telephone charges, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, electronic research costs, court reporter fees and mediator fees, regardless of whether such costs are otherwise taxable.

5.4    Engineer shall continue to perform the Services, without interruption or delay, pending the resolution of any dispute, claim or controversy between Owner and Engineer arising out of, relating to, or connected with the Agreement, the Services, or the Project.

5.5    In the event of any legal proceeding between Owner and any third party arising out of or relating to the Project, Engineer agrees that Owner may join Engineer in any such proceedings and that Owner may consolidate any such proceedings with any proceeding between Engineer and Owner under the Agreement. Owner may make persons other than Owner and Engineer parties to any legal proceeding hereunder with respect to any claim, dispute or other matter in question arising out of or relating to the Project.

**Article 6 – Termination**

6.1    **Termination by Owner.** The Agreement may be terminated by Owner with or without cause upon written notice to Engineer at any time. In the event of termination not the fault of Engineer, Owner shall pay Engineer for the Services properly and fully performed prior to termination, together with Reimbursable Expenses then due.

6.2    **Termination by Engineer for Cause.** Repeated failure of Owner to make payments to Engineer in accordance with the Agreement that are properly due and undisputed shall be considered substantial non-performance and cause for termination upon written notice to Owner that it has failed to pay such amounts, but only if Owner then fails to cure its breach within thirty (30) days after receipt of such written notice. In the event that Engineer properly terminates the Agreement pursuant to this Section 6.2, then Owner shall pay Engineer for the Services properly, fully, and timely performed prior to termination, together with Reimbursable Expenses then due.

6.3    Upon termination for any reason, all Documents prepared by, through, or for, Engineer and/or its Subconsultants pursuant to the Agreement shall be promptly delivered to Owner.

**Article 7 – Payments to Engineer**

7.1    **Payments to Engineer.** Engineer shall submit invoices monthly to Owner based upon the percent complete of Services performed in the prior month. Engineer shall submit to Owner invoices (together with proper back-up documentation) on a monthly basis for Services rendered and Reimbursable Expenses incurred. Such invoices shall reflect Engineer's estimate of the

3

DS-0002051

**TERMS AND CONDITIONS**

total Services performed to date, less all payments previously made by Owner to Engineer. Subject to the terms herein, Owner shall pay the undisputed portion of Engineer's invoices no later than thirty (30) days after Owner's receipt thereof. If Owner objects to Engineer's invoice or any portion thereof, then Owner shall endeavor to notify Engineer of such objection within thirty (30) days after Owner's receipt of such invoice; however, Owner's failure to provide such notice within such time frame shall not result in a waiver of any claims by Owner or Owner's right to object to Engineer's invoice. Owner may withhold the amount of such invoice in dispute and Owner shall pay the undisputed portion of such invoice as set forth herein. Undisputed payments due which are not timely paid by Owner shall bear interest in accordance with Paragraph 10.14 hereof, provided that Owner's refusal to pay disputed amounts of Engineer's invoices shall not constitute a payment default and, as a result, such disputed amounts shall not accrue interest unless or until the day that such dispute is resolved in favor of Engineer. Engineer may not suspend the performance of its Services on account of amounts of its invoices that Owner disputes and withholds payment and Engineer shall continue to perform its Services pending the resolution of any such payment dispute between Owner and Engineer. Engineer shall also provide with each invoice the back-up information in support of the invoice that is reasonably requested by Owner, including, without limitation, the weekly time sheets of Engineer's personnel which have been previously approved in writing by Owner on a weekly basis. As a condition precedent to Owner's obligation to make progress payments, it is expressly agreed that Engineer shall furnish to Owner the following: (a) a conditional waiver and release of claims from Engineer and each of its Subconsultants that have performed any of the Services described in the invoices submitted in support of such progress payment in the total amount of the payment being requested, conditioned only on the receipt of payment of such amount; (b) for Engineer and each Subconsultant who performed Services which were described in the invoices previously paid for by Owner, an executed Waiver and Release of Lien Upon Progress Payment in the form prescribed in Section 713.20, Florida Statutes, for all Services performed which were included in the invoices previously paid for by Owner; and (c) releases of liens, if any claims of liens have been recorded. As a condition precedent to Owner's obligation to make final payment to Engineer for all Services properly performed under the Agreement, it is expressly agreed that Engineer shall furnish to Owner, for Engineer, and for each of its Subconsultants who furnished Services: (i) conditional waivers and releases upon final payment and within ten (10) days after receipt of payment, Engineer shall deliver an executed Unconditional Waiver and Release of Lien Upon Final Payment in the form prescribed in Section 713.20, Florida Statutes, and (ii) final satisfactions of all liens and claims arising out of the Agreement.

**7.2    Reimbursable Expenses.** Reimbursable Expenses are in addition to Engineer's Fee for Services and include actual, reasonable out-of-pocket expenses incurred by Engineer and Engineer's consultants in the interest of the Project, including, but not limited to the following:

(a) Data communications, telecommunications, reproduction, shipping, handling, and delivery;

(b) Mileage, tolls, cab fares, and parking;

(c) Renderings, models, computer modeling mock-ups, and photography;

(d) Sales tax and other transactional taxes, and fees paid for securing approval of Governmental Authorities;

(e) Authorized out-of-town travel, including travel time, out-of-town living expenses, and long-distance communications; and,

(f) Additional insurance coverage or limits requested by Owner in excess of that normally provided by Engineer and Engineer's Subconsultants.

**Article 8 - Insurance**

**8.1    Types and Limits of Insurance.** Engineer shall purchase and maintain the following types and minimum amounts of insurance:

**.1    Workers' Compensation/Employers Liability Insurance.** Workers' compensation insurance that complies with all applicable statutory requirements. Employers liability insurance that has a limit of not less than One Million and 00/100 Dollars ($1,000,000.00) and includes a Waiver of Right to Recover From Others endorsement (NCCI form WC 000313) naming the Indemnitees;

**.2    Commercial General Liability Insurance.** Commercial general liability insurance on a per occurrence basis, covering all operations of Engineer as named insured, including (i) independent contractor coverage, (ii) products/completed operations liability coverage (which shall be maintained for two (2) years following completion of the Services), (iii) broad form property damage liability coverage, (iv) broad form contractual liability coverage that insures Engineer's liabilities assumed under the Agreement, including the indemnification obligations under Section 9.1, (v) advertising injury coverage, and (v) bodily injury, personal injury (with employee and contractual exclusions deleted), property damage and death coverage, with limits of not less than One Million and 00/100 Dollars ($1,000,000.00) per occurrence and Two Million and 00/100 Dollars ($2,000,000.00) in the general aggregate;

**.3    Automobile Liability Insurance.** Automobile liability insurance with limits of liability of not less than One Million and 00/100 Dollars ($1,000,000.00) combined single limit for bodily injury and property damage coverage. Such coverage shall include all automobiles owned, leased, hired or non-owned. In addition, Engineer's automobile liability insurance policy shall include coverage for automobile contractual liability;

**.4    Professional Liability Insurance.** Professional liability insurance (or errors and omissions insurance) that provides coverage for (i) claims arising out of the Services provided by Engineer, (ii) errors and omissions the Documents prepared by or through Engineer, and (iii) the indemnity in Section

DS-0002052

**TERMS AND CONDITIONS**

9.1. The professional liability insurance shall be have a limit of not less than Two Million and 00/100 Dollars ($2,000,000.00) each claim and Four Million and 00/100 Dollars ($4,000,000.00) in the annual aggregate, with a maximum One Hundred Thousand and 00/100 Dollars ($100,000.00) self-insured retention or deductible per claim; and

.5      **Umbrella Liability Insurance.**  Umbrella (excess) liability insurance on a per occurrence basis with a limit of liability of not less than Five Million and 00/100 Dollars ($5,000,000.00) per occurrence and Five Million and 00/100 Dollars ($5,000,000.00) in the annual aggregate excess of primary insurance, and a maximum Ten Thousand and 00/100 Dollars ($10,000.00) self-insured retention or deductible per occurrence. This policy shall apply on a "following form" basis to the underlying insurance policies.

8.2      **Terms, Conditions and Endorsements.** All of the insurance in Section 8.1 shall be subject to the following terms, conditions and endorsements:

.1      **Insurer.** The insurance shall be purchased from a company with an "A-:IX" or better rating from A.M. Best Company which is both lawfully able to provide insurance in the jurisdiction in which the Project is located and acceptable to Owner.

.2      **Additional Insureds Endorsements.** All insurance, except the workers compensation and professional liability insurance, shall include the Indemnitees as additional insureds thereunder, on a primary and non-contributory basis, pursuant to ISO Form CG 20 10 (11/85) or equivalent endorsement(s). Subsequent editions of these ISO Forms are not acceptable. The coverage provided to the additional insureds must be as broad as that provided to Engineer and shall not contain any additional exclusionary language or limitations applicable to such additional insureds. These endorsements shall apply without regard to other provisions of the Agreement.

.3      **Primary Insurance.** Engineer's commercial general liability insurance, the automobile liability insurance, and the umbrella liability insurance shall apply as primary insurance, without any right of contribution by any other insurance that may be carried by Indemnitees regarding the Services under the Agreement. Any general liability, automobile liability or umbrella liability insurance purchased by the Indemnitees is, or has been, specifically purchased as excess over any general liability, automobile liability or umbrella liability purchased by Engineer.

.4      **Contractual Liability Insurance.** ISO or other endorsements that restrict or modify the extent of the standard contractual liability coverage afforded by the commercial general liability and automobile liability insurance policies are not acceptable.

.5      **Severability of Interest**. The insurance shall include a severability of interest clause for all named insureds and additional insureds.

.6      **Duration**. Coverage shall be maintained, without interruption, from the date of commencement of Engineer's Services under the Agreement until the date of the final payment, except that the professional liability insurance and umbrella policies shall continue for seven (7) years after Engineer's completion of its Services hereunder. The insurance obligations shall survive the expiration or termination of the Agreement.

.7      **Notice of Cancellation, Etc**. The insurance policies, certificates of insurance, and any renewals shall contain a provision that the insurer or Engineer shall give Owner at least thirty (30) days' prior written notice of any cancellation, termination, material modification or non-renewal of the insurance by registered or certified mail, return receipt requested.  In the certificate of insurance, any "endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" wording in the cancellation notification portion shall be deleted.

.8      **Defense**. The insurance obtained by Engineer, except for professional liability and workers compensation insurance, shall provide that the insurer shall defend any suit against the additional insureds, even if such suit is allegedly or actually frivolous or fraudulent.  Defense costs shall apply in excess of any per occurrence limit of liability and shall not reduce any aggregate limits of liability applying under the policies.

.9      **Delivery of Certificates and Policies.** Original certificates of insurance and all endorsements, in a form acceptable to Owner, should be submitted to Owner by the time the Agreement is executed by Engineer, and in no event later than commencement of the Services.  Engineer's certificate of insurance shall be endorsed as follows: "The Indemnitees (as defined in the subject contract) are named as additional insureds for all insurance except the workers compensation and the professional liability insurance. A waiver of subrogation in favor of the Indemnitees is included for all insurance. This insurance is primary to and non-contributing with any and all insurance of the Indemnitees." The Certificate Holder box shall identify the name and address of Owner. With respect to insurance coverage required to remain in force after final payment, Engineer shall annually submit certificates of insurance evidencing continuation of such coverage. Engineer shall submit copies of the policies within seven (7) days following a request from Owner. Engineer shall provide its insurance carriers with a copy of the Agreement.

.10     **Non-Waiver**. PERMITTING ENGINEER TO COMMENCE THE SERVICES OR RELEASING ANY PAYMENT PRIOR TO COMPLIANCE WITH THESE REQUIREMENTS SHALL NOT CONSTITUTE A WAIVER THEREOF.

.11     **Deductibles, Premiums and Self-Insured Retentions.** Engineer shall be solely responsible to pay or otherwise satisfy all premiums, deductibles and self-insured retentions applicable to the insurance policies that Engineer is required to procure and maintain pursuant to the Agreement.

DS-0002053

**TERMS AND CONDITIONS**

9.3 **Waiver of Subrogation.** Engineer waives all rights of recovery against the Indemnitees for any losses covered by insurance. Engineer agrees to defend and indemnify the Indemnitees from all such subrogation claims.

**Article 9 - Indemnity** See next Page

9.1 **Engineer's Indemnity.** To the fullest extent permitted by law and at Engineer's sole cost and expense, Engineer and Engineer's successors and assigns, shall defend, indemnify, protect, hold the Indemnitees harmless from and against any and all claims, demands, damages, losses, lawsuits and other proceedings, judgments, causes of action, liabilities, claims of lien, liens, civil or criminal penalties and charges, costs and expenses (including, without limitation, claims for property damage or bodily injury, including death and reasonable attorneys' and expert witnesses' and consultants' fees and costs whether incurred before suit, during suit, during mediation, or at the appellate level) (collectively "Losses" and each individually, a "Loss") to the proportionate extent caused by any of the following: (i) Engineer's breach of the Agreement; (ii) any infringement of any patent, trademark or copyright or the violation of any trade secret or other proprietary right that arises in connection with the Services; (iii) any act, omission or error of Engineer, its Subconsultants, partners, members, managers, agents, officers, directors, representatives, employees and anyone for whose acts or omissions Engineer may be liable, including, without limitation, any failure to pay and sums due from them in connection with the Project; (iv) any claims made by a Subconsultant or any person working for or through Engineer, seeking money or compensation for services or work performed for the Project, including any liens filed by any such persons on or in connection with the Project; (v) any negligence, gross negligence, intentional misconduct, recklessness, fraud, bad faith or misconduct of Engineer, its Subconsultants, partners, members, managers, agents, officers, directors, representatives, employees and anyone for whose gross negligence or intentional misconduct Engineer may be liable or any of their agents or employees or other persons working for or through any of them; and/or (vi) any injury to the personnel, or damage to property of Engineer or any Subconsultant. Should any Loss be caused in part, but not in whole, by an Indemnitee's acts or omissions, then Engineer's obligations under this Section 9.1 shall be limited to that portion of the Loss that is not caused by such Indemnitee's acts or omissions. Engineer shall, upon receipt of notice of any Loss, promptly take such action necessary to make a claim under any applicable insurance policy or policies Engineer is carrying and maintaining; however, if Engineer fails to take such action as is necessary to make a claim under any such insurance policy, Engineer shall indemnify and hold Indemnitees harmless from any and all costs, damages, charges, expenses and liabilities, including without limitation, attorneys' fees, incurred by any and all Indemnitees in making any claim on behalf of Engineer under any insurance policy or policies required pursuant to this Article 9.

9.2 In light of the foregoing, all of Engineer's agreements to indemnify others pursuant to the terms of the Agreement shall be deemed limited and modified to the extent necessary for such indemnities to constitute enforceable indemnities under Section 725.06, Florida Statutes. With regard thereto, Engineer and Owner have not included a monetary limitation regarding the

indemnification obligations of Engineer because the Parties have interpreted Section 725.06, Florida Statutes, to require that limitation only (i) when Engineer agrees to assume the obligation to indemnify the Indemnitees fully, whether caused in whole or in part by any act, omission, or default of an Indemnitee arising from the Agreement or its performance, rather than (ii) when Engineer agrees (as with the Agreement) to assume the obligation to indemnify the Indemnitees as set forth in Section 9.1 hereof. For this reason, it is also understood and agreed that this indemnification obligation complies with the terms of Section 725.06, Florida Statutes, which prevent Engineer from indemnifying the Indemnitees to the extent that any such claims, damages, losses or expenses result (i) from gross negligence, or willful, wanton or intentional misconduct of the Indemnitees or (ii) for statutory violations or punitive damages, except and to the extent the statutory violations or punitive damages are caused by or result from the acts or omissions of Engineer, or any of its Subconsultants or agents of any tier, or their respective employees. As such, the Parties agree that neither shall challenge Engineer's indemnification obligations on the basis that the terms of Section 725.06, Florida Statutes, have not been satisfied

9.3 The obligations described in this Article 9 shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person indemnified pursuant to this Article 9.

9.4 In any and all claims against one or more Indemnitees by any employee of Engineer, anyone directly or indirectly employed by Engineer, or anyone for whose acts Engineer may be liable, the indemnification obligation under this Article 9 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Engineer under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

9.5 Except to the extent that injuries to persons or damage to property are caused by the Indemnitees: (a) Engineer hereby assumes the risk of any and all injury and damage to the personnel and property of Engineer (or its Subconsultants) in or about the Project; and (b) the Indemnitees are hereby released from any liability for injury or damage which may be sustained by the person, goods or property of Engineer, or its employees and Subconsultants in or about the Project, whether said damage or injury results from conditions arising within the Project or from other sources.

9.6 All of Engineer's obligations under this Article 9 shall survive final payment to Engineer, completion of the Services, or any earlier termination of the Agreement.

**Article 10 - Miscellaneous**

10.1 **Governing Law.** The Agreement shall be governed by the laws of the State of Florida without regard to conflicts of laws principals.

10.2 **Anti-Bribery and Anti-Corruption Commitment.** Engineer acknowledges its responsibility and commitment to abide by and comply with international anti-corruption laws, including

6

DS-0002054

**TERMS AND CONDITIONS**

9.1  To the fullest extent permitted by law, Consultant shall indemnify Owner, its officers, directors, partner, employees, and representatives, from and against losses, damages, and judgments arising from claims, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are found to be caused by a negligent act, error, or omission of Consultant or Consultant's officers, directors, members, partners, agents, employees, or sub consultants in the performance of services under this Agreement.  In no event shall the indemnification obligation extend beyond the date when the institution of legal or equitable proceedings for professional negligence would be barred by any applicable statute of repose or limitations.

MIA 184524626v3

DS-0002055

**TERMS AND CONDITIONS**

but not limited to the United State Foreign Corrupt Practices Act, and any amendments and regulations relating to such laws, in addition to their own ethical guidelines. Specifically, for example, no Engineer employee, or any individual or entity acting on behalf of or for the benefit of Engineer, shall give anything of value, or that may be perceived as valuable, to a foreign official or any other individual for the purpose of influencing any act, securing any improper advantage, or obtaining/retaining business. Further, no Engineer employee may receive or accept anything of value, or that may be perceived as valuable, from any other individual for the purpose of influencing any act, securing an improper advantage, or obtaining/retaining business. Owner may terminate the Agreement at any state of the Project, if it has a good faith basis to believe that Engineer failed to comply with the provisions of this Section 10.2, including any non-compliance prior to the Effective Date of the Agreement. Engineer shall indemnify Indemnitees from and against any and all liabilities, losses, damages, costs, and expenses (including reasonable attorneys' fees and costs of defense), together with interest thereon, arising out of or resulting from such non-compliance, without any limitation regarding the amount of such liability.

10.3 **Asbestos and Hazardous Waste.** Engineer shall have no responsibility for the discovery, presence, handling, containment, removal disposal, remediation, corrective action or other response to, or for exposure of persons to, any asbestos or hazardous waste which exists in any form at the Project as of the Effective Date of the Agreement. The foregoing shall not apply to any such hazardous waste introduced to the Project, or exacerbated, by Engineer or anyone acting by, through or under Engineer, including its Subconsultants, and, notwithstanding anything to the contrary in the Agreement, Contractor shall have full responsibility therefor and shall indemnify and hold Owner harmless from any liability or loss caused thereby.

10.4 **Waiver of Consequential Damages.** Engineer hereby waives claims against Owner for consequential, incidental, special and indirect damages arising out of, or relating to, the Project and the Services, including consequential, incidental, special and incidental damages proximately caused by either party's termination of the Agreement.

10.5 **Successors and Assigns.** Engineer binds itself, its partners, successors, assigns and legal representatives to Owner, any lender of Owner for the Project, and to partners, successors, assigns, and legal representatives of Owner in respect to the obligations contained in the Agreement. Nothing contained in the Agreement creates a contractual relationship with or a cause of action in favor of a third party against either Owner or Engineer. Engineer shall not assign or delegate any rights or obligations under the Agreement, or permit any change in the persons in effective control of Engineer's business or subcontract the performance of any portion of the Services required hereunder except as otherwise may be agreed in writing by Owner in its sole discretion. Any attempt to so assign or transfer the Agreement or any rights or obligations hereunder without such consent shall be null and void and of no force and effect. A change in Engineer's ownership (i.e., the ownership of one or more partners', or members' or shareholders' interests in Engineer) shall not constitute an assignment for purposes of this provision provided

that said change does not constitute a substantial change in the ownership structure of Engineer. Engineer acknowledges and agrees that Owner may assign its rights and obligations under the Agreement to any of its affiliates and to any person or entity which has an interest in the Project, to any lender for the Project, to any successor to Owner's interests in the Project or to any entity capable of performing Owner's obligations hereunder and, upon such assignment and the assumption of such rights and obligations by the assignee, Owner shall be relieved of all liability hereunder.

10.6 **No Third-Party Beneficiaries.** Owner is the sole beneficiary of the Services performed by Engineer. No third party may be deemed a third-party beneficiary of the Agreement.

10.7 **Nondisclosure.** Unless compelled by law, a Governmental Authority, an order of a court of competent jurisdiction, or a validly issued subpoena, Engineer agrees to refrain from disclosing any Project information, obtained from Owner and not readily available in the public domain, to any person without Owner's prior written authorization, which authorization may be withheld by Owner in its sole discretion. In the event of a legal compulsion or other order seeking disclosure of any non-public Project information, Engineer shall promptly notify Owner to permit Owner's timely legal objection, if necessary. Owner considers all information pertaining to the Work, the Services and the Project to be confidential and proprietary unless otherwise stated to Engineer in writing. Engineer shall refrain from disclosing such information without Owner's prior written consent, including information prepared or developed by or through Design Architect, Architect, Contractor, Owner, or other contractors or consultants.

10.8 **Chapter 558, Florida Statutes.** PURSUANT TO FLORIDA STATUTES SECTION 558.005(1) AND 558.005(6), OWNER AND ENGINEER HEREBY AGREE TO OPT OUT OF THE REQUIREMENTS OF CHAPTER 558, FLORIDA STATUTES, AND THEREFORE SAID SECTION DOES NOT APPLY TO ANY CLAIMS BETWEEN OWNER AND ENGINEER ARISING OUT OF OR RELATED TO THE AGREEMENT, THE SERVICES OR THE PROJECT.

10.9 **PURSUANT TO SECTION 558.0035, FLORIDA STATUTES, AN INDIVIDUAL EMPLOYEE OR AGENT OF ENGINEER MAY NOT BE HELD INDIVIDUALLY LIABLE FOR NEGLIGENCE.**

10.10 **Survival of Obligations.** All indemnities, representations, warranties and waivers made by Engineer in favor of Owner, its agents, employees, successors or assigns, shall survive final payment hereunder, completion of the Services, or any earlier termination of the Agreement.

*MIA 184524626v3*

DS-0002056

**TERMS AND CONDITIONS**

**10.11** **Limited Partners and Members Not Liable.** Engineer's recourse against Owner under the Agreement shall be limited to Owner's interest in the Project, and Owner's assets. Engineer shall have no other recourse to any assets of Owner's Representative whatsoever, or to any assets of any partner, member, director, officer, affiliate, manager, employee or other representative of Owner for the satisfaction of Owner's obligations hereunder.

**10.12** **Financing.** If, in connection with the financing of the Project, the lender or title insurer requires subordination of any construction or other lien rights of Engineer in connection with the Project, Engineer agrees to execute and deliver to such lender or title insurer a subordination agreement in form and with substance reasonably required by the lender or title insurer. Furthermore, Engineer agrees to comply with any and all other customary or reasonable requirements of lenders and title insurers for the Project, including but not limited to any requirements that may be imposed as a condition to payments due under the Agreement and any requirements requiring modifications to the Agreement. Engineer agrees that notwithstanding a default by Owner under the Agreement which would give Engineer the right to terminate the Agreement, Engineer will continue to perform the Services (on the same terms and conditions set forth in the Agreement) for and on account of the lender financing the Project if the lender assumes the payment obligations of Owner arising after the lender receives written notice of such default from Engineer.

**10.13** **Confidentiality.** Engineer, for itself and its employees, personnel and subconsultants, acknowledges, confirms and agrees that all information pertaining to the Project that Engineer learns prior to or during the course of performance of its Services, all data furnished by Owner, the name, trademarks, or logotypes now or hereafter used by the Project or Owner (or any variation thereof), the Documents, all documents prepared by, or through, Engineer, including plans, drawings, designs, specifications, and other data and information pertaining to the Project, are confidential and proprietary to Owner (collectively, "**Confidential Information**") and shall remain of a confidential nature. Except as is necessary for Engineer to perform its Services hereunder, Engineer shall not utilize or permit the utilization of any Confidential Information (including the design or the concepts utilized for the Project) at any time for any reason whatsoever, including advertising, without, in each such instance, the express, advance written consent of Owner. Engineer shall be responsible for the breach of this confidentiality by its employees, subconsultants, personnel, and agents. Any publicity or press releases with respect to the Project shall be under the sole discretion and control of Owner. Unless compelled by law, a Governmental Authority, an order of a court of competent jurisdiction, or a validly issued subpoena, Engineer agrees to refrain from disclosing any Confidential Information, to any person without Owner's prior written authorization, which authorization may be withheld by Owner in its sole discretion. In the event of a legal compulsion or other order seeking disclosure of any Confidential Information, Engineer shall promptly notify Owner to permit Owner's timely legal objection.

**10.14** **Interest.** Payments due and unpaid under the Agreement shall bear interest thirty (30) days from the date payment was due at the lower of the Prime Rate as listed in the *Wall Street Journal*

(or its successor) or the maximum legal rate prevailing from time to time in the state where the Project is located.

**10.15** **Non-Waiver.** The failure of Owner, at any time, to require performance of any provision or to resort to any remedy provided under the Agreement shall in no way affect the right of Owner to require performance or to resort to a remedy at any time thereafter, nor shall Owner's express waiver of a breach be deemed to be a waiver of any subsequent breach. Neither course of dealing, nor the failure to exercise, or the delay in exercising, any right, power or privilege hereunder, shall operate as a waiver thereof. A waiver shall not be effective unless it is in writing and signed by the party against whom the waiver is being enforced.

**10.16** **Construction of Agreement.** Both Parties have participated freely in the negotiation and drafting of the Agreement and the Agreement shall not be more strictly construed against either Party hereto.

**10.17** **Invalid or Inconsistent Provisions.** In the event that any of the provisions of the Agreement, or any part thereof, is rendered invalid or unenforceable by Governmental Requirements, or by judicial decision, then such provision, or any part thereof, shall continue in effect only to the extent permitted. However, the invalidity or unenforceability of any provision, or any part thereof, of the Agreement shall not affect the enforceability of the remaining provisions of the Agreement. To the extent that any of the Articles or Sections herein contain provisions relating or pertaining to the same subject matter, the obligations, covenants and/or conditions set forth therein shall be cumulative and, where applicable, concurrent. Further, to the extent that any such provisions may be interpreted to be conflicting and/or mutually exclusive, it is the intent of the Parties hereto that the obligations, conditions or covenants, as applicable, which provide the greatest protection or benefit to the Party for whose benefit such protection is intended, shall apply.

MIA 184524626v3

DS-0002057

**TERMS AND CONDITIONS**

MIA 184524626v3

DS-0002058