# CERTIFICATION

I, Scott R. Ostericher, do hereby certify that I am the AVP, Claim Operations of RLI Insurance Company, a corporation organized and existing under the laws of the State of Illinois, and that to the best of my knowledge the attached is a true and correct copy of Policy No. PSE0004386 (04/30/2021-04/30/2022) issued to Named Insured DeSimone Consulting Engineering DPC.

DN: cn=Scott R. Ostericher, o=RLI/Mt. Hawley/CBIC, ou=Claim
Department, email=scott.ostericher@rlicorp.com, c=US
Reason: To the best of my knowledge the attached is a true
and correct copy of this policy.
Location: Peoria, Illinois
Date: 2021.07.27 10:12:53 -05'00'

Scott R. Ostericher, AVP, Claim Operations, Claims
RLI Insurance Company



## RLIPack® EXCESS LIABILITY DECLARATIONS



**RLI Insurance Company**
9025 N. Lindbergh Drive - Peoria, Illinois 61615

**POLICY NO:** PSE0004386

**PRODUCER:** 67596
Ames & Gough (67596)
8300 Greensboro Drive
Suite 980
McLean, VA 22102

### ITEM 1. NAMED INSURED AND MAILING ADDRESS
DeSimone Consulting Engineering DPC
140 Broadway, 25th Floor
New York, NY 10005

### ITEM 2. POLICY PERIOD (Mo./Day/Yr.)
**FROM** 04/30/2021 **TO** 04/30/2022 **12:01 A.M. Standard Time at your mailing address shown above.**

### ITEM 3. LIMITS OF LIABILITY

| | |
|---|---|
| $ 10,000,000 | Each Occurrence |
| $ N/A | Each Occurrence Auto Sublimit |
| $ 10,000,000 | General Aggregate |
| $ 10,000,000 | Products-Completed Operations Aggregate |

### TEM 4. SCHEDULE OF UNDERLYING INSURANCE
**See PPU 110**

### ITEM 5. PREMIUM
**Non-Auditable** ☒
**Flat Rate: $** ▮
**Auditable**
**Advance Premium: $**          **Rate: $**          **Premium Basis:**
 **Estimated Exposure:**          **Audit Period (annual unless noted):**
**Policy Minimum: $**
**Terrorism Charge: $** ▮
**Total Premium Due: $** ▮

### ITEM 6. FORMS AND ENDORSEMENTS ATTACHED AND MADE A PART OF THIS POLICY AT ISSUE
**See endorsement RIL 2150**

**Countersigned by**

_____  _____

**Authorized Representative**

Policy Number: PSE0004386                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® SCHEDULE OF UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Item 4. of the declarations is amended to include:

| Type of Coverage | Carrier | Eff. Date | Exp. Date | Limits |
|---|---|---|---|---|
| Business Liability | RLI Insurance Company | 04/30/2021 | 04/30/2022 | Occurrence $ 1,000,000<br>Aggregate $ 2,000,000 |
| Employee Benefits Liability | RLI Insurance Company | 04/30/2021 | 04/30/2022 | Each Employee $1,000,000<br>Aggregate $1,000,000 |
| Employers' Liability | RLI Insurance Company | 04/30/2021 | 04/30/2022 | Each Accident $1,000,000<br>Disease Each Employee $1,000,000<br>Disease Policy Limit $1,000,000 |
| Business Auto Liability | RLI Insurance Company | 04/30/2021 | 04/30/2022 | Each Accident $1,000,000 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® SCHEDULE OF UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Item 4. of the declarations is amended to include:

| Type of Coverage | Carrier | Eff. Date | Exp. Date | Limits |
|---|---|---|---|---|
| Business Liability | Foreign Package | 04/30/2021 | 04/30/2022 | Occurrence $ 1,000,000<br>Aggregate $ 2,000,000 |
| Employee Benefits Liability | N/A | | | Each Employee $<br>Aggregate $ |
| Employers' Liability | Foreign Package - Work Comp | 04/30/2021 | 04/30/2022 | Each Accident $1,000,000<br>Disease Each Employee $1,000,000<br>Disease Policy Limit $1,000,000 |
| Business Auto Liability | Foreign Package - Auto | 04/30/2021 | 04/30/2022 | Each Accident $1,000,000 |
| | | | | |
| | | | | |
| | | | | |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.
FORMS APPLY IN ALL STATES UNLESS DESCRIBED OTHERWISE IN THE FORM OR IN THE 'Applicable In' COLUMN BELOW.

| Form Number | Form Title | Applicable In |
|---|---|---|
| PPU101 07 17 | RLIPACK COMMERCIAL EXCESS LIABILITY COVERAGE FORM | |
| PPK300 12 10 | RLIPACK NAMED INSURED ENDORSEMENT | |
| PPK2108 05 11 | RLIPACK NOTICE OF CANCELLATION OR NONRENEWAL - DESIGNATED PERSON OR ORGANIZATION | |
| PPU300 06 10 | RLIPACK ASBESTOS EXCLUSION | |
| PPU301 06 10 | RLIPACK SILICA EXCLUSION | |
| PPU302 08 17 | RLIPACK FOR DESIGN PROFESSIONALS PROFESSIONAL SERVICES EXCLUSION | |
| PPU302 03 20 | RLIPACK FOR DESIGN PROFESSIONALS PROFESSIONAL SERVICES EXCLUSION | |
| PPU303 06 10 | RLIPACK LEAD EXCLUSION | |
| PPU304 06 10 | RLIPACK FOR DESIGN PROFESSIONALS EXCESS LIABILITY ENHANCEMENT | |
| PPU304NY 01 13 | NEW YORK RLIPACK FOR DESIGN PROFESSIONALS EXCESS LIABILITY ENHANCEMENT | |
| PPU305 06 10 | RLIPACK DISCRIMINATION EXCLUSION | |
| PPU306 06 10 | RLIPACK EMPLOYMENT PRACTICES LIABILITY EXCLUSION | |
| PPU307 06 10 | RLIPACK DAMAGES TO PREMISES RENTED TO YOU EXCLUSION | |
| PPU308 06 10 | RLIPACK UM/UIM EXCLUSION | IL |
| PPU308 09 11 | RLIPACK UNINSURED/UNDERINSURED MOTORISTS EXCLUSION | CT,NV,MA,CA,FL |
| PPU308 12 11 | NEW YORK RLIPACK SUPPLEMENTARYUNINSURED/UNDERINSURED MOTORISTS EXCLUSION | |
| PPU310 01 15 | RLIPACK CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM | |
| PPU313 08 11 | NEW YORK RLIPACK EXCLUSION SILICA | |
| PPU333 05 17 | RLIPACK FOREIGN TERRORISM EXCLUSION | CT,NV,MA,IL,CA,TX |
| PPU334 05 17 | RLIPACK VALUATION AND CURRENCY | |
| PPU335 05 17 | RLIPACK WAR EXCLUSION | |
| PPU337 06 17 | RLIPACK AIRCRAFT EXCLUSION | |
| PPU341 03 20 | RLIPACK EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM | NY |
| PPU406 05 12 | CONNECTICUT CHANGES | |
| PPU409 05 12 | FLORIDA CHANGES | |
| PPU412 05 11 | ILLINOIS CHANGES | |
| PPU420 06 12 | MASSACHUSETTS CHANGES | |
| PPU427 05 12 | NEVADA CHANGES | |
| PPU431 01 13 | STATE OF NEW YORK AMENDATORY ENDORSEMENT | |

| | |
|---|---|
| PPU442 11 11 | TEXAS CHANGES |
| RIL2143 11 13 | CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO |
| | DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT) |
| ILF0001C 04 16 | SIGNATURE PAGE |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                    RLI Insurance Company

# RLIPack® COMMERCIAL EXCESS LIABILITY COVERAGE FORM

## (Occurrence Form)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance**.

Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II – DEFINITIONS**.

In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:

## SECTION I – INSURING AGREEMENT

### A. Coverage

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and in the coverage territory as defined in the **underlying insurance**. If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, endorsements and limitations of and shall follow the underlying insurance in all respects.

### B. Defense And Expense Of Claims And Suits

1. We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.

2. We shall not pay any expenses except as follows:

   a. If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.

   b. If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.

   c. If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:

      (1) The **underlying insurance** pays pre-judgment interest; and

      (2) Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.

3. Subject to all of the foregoing:

   a. If the defense expense payments are included within the limit of liability of the **underlying insurance** by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.

   b. If the **underlying insurance** does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.

### C. Limits Of Liability

1. The limit of liability stated in the Declarations as applicable to each occurrence shall be the total limit of our liability for all **ultimate net loss** sustained by any one person or as the result of any one occurrence as applied to the appropriate coverage.

2. Subject to the limit of liability for each occurrence:

**a.** The limit of liability stated in the Declarations as general aggregate is the most we will pay during each policy period for all **ultimate net loss**, except **ultimate net loss** because of injury and damage included in the products-completed operations hazard or for covered claims involving automobile liability; and

**b.** The limit of liability stated in the Declarations as products-completed operations aggregate is the most we will pay during each policy period for all **ultimate net loss** because of injury and damage included in the products-completed operations hazard.

**3.** This insurance shall apply only as excess of the **underlying insurance** limits of liability shown in the Declarations. However, if the limit of liability of the **underlying insurance** shown in the Declarations has been reduced or exhausted because of payments for an occurrence which took place during our policy period, then this policy shall apply as excess of such reduced limit of liability of the **underlying insurance**.

## SECTION II – DEFINITIONS

**A. Ultimate net loss** means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.

**Ultimate net loss** shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are included within the limit of insurance of the **underlying insurance** by the terms of that policy.

**B. Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

## SECTION III – EXCLUSIONS

Regardless of whether or not such coverage is afforded by any **underlying insurance**, this policy does not apply:

**A. Pollution**

**1.** Advertising injury, bodily injury, personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**a.** That are, or that are contained in any property that is:

**(1)** Being moved from the place where such property or pollutants are accepted by an insured for movement into or onto an automobile;

**(2)** Being transported or towed by an automobile;

**(3)** Otherwise in the course of transit by or on behalf of an insured;

**(4)** Being stored, disposed of, treated or processed in or upon an automobile; or

**(5)** Being moved from an automobile to the place where such property or pollutants are finally delivered, disposed of or abandoned by an insured;

**b.** At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured;

**c.** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**d.** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom any insured may be legally responsible; or

**e.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(1)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants.

Paragraphs **1.a.(4)** and **1.b.** through **1.e.** above do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an automobile or its parts, if the pollutants escape, seep or migrate or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs **1.b.** through **1.e.** above do not apply to pollutants not in or upon an automobile if:

**a.** The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an automobile;

**b.** The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

**c.** The bodily injury or property damage is not otherwise excluded under Paragraph **1.a.** of this exclusion.

Paragraph **1.e.(1)** above does not apply to bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Paragraphs **1.b.** and **1.e.(1)** above do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

**2.** Any loss, cost or expense arising out of any:

   **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   **b.** Claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this exclusion:

**1.** Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be; and

**2.** Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

**B. Nuclear Energy Liability Exclusion (Broad Form)**

This policy does not apply:

**1.** Under any Liability Coverage, to **ultimate net loss:**

   **a.** With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Under any Medical Payment Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **ultimate net loss** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

**3.** Under any Liability Coverage, to **ultimate net loss** resulting from the hazardous properties of nuclear material, if:

   **a.** The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

   **b.** The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **c.** The loss arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. If such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **3.** applies only to **ultimate net loss** to such nuclear facility and any property thereat.

As used in this policy:

Hazardous properties include radioactive, toxic or explosive properties;

Nuclear material means source material, special nuclear material or by-product material;

Source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

Waste means any waste material (1) containing by-product material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under Paragraph **(a)** or **(b)** thereof;

Nuclear facility means:

**(a)** Any nuclear reactor;

**(b)** Any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

**(c)** Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Ultimate net loss** includes all forms of radioactive contamination of property.

**C. Workers' Compensation And Similar Laws**

This policy does not apply:

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**SECTION IV – CONDITIONS**

**A. Appeal –** In the event you or any underlying insurer elect not to appeal a judgment in excess of the amount of any **underlying insurance**, we may elect to appeal. Our limit of liability shall not be increased because of such appeal. Any appeal we elect to make will be at our cost and expense.

**B. Assignment –** Your interest in this policy may not be transferred to another; except by an endorsement issued by us which gives our consent. If you die, this policy shall apply: (1) to your legal representative, but only while acting within the scope of their duties as such; and (2) with respect to your property, to the person having proper temporary custody as an insured, but only until the appointment and qualification of the legal representative.

**C. Changes –** This policy may be changed only by an endorsement issued to form a part of the policy. Notice to you or to our agent or knowledge possessed by us, by our agent or by any other person shall not affect a waiver or a change in any part of this policy. Nor will such notice or knowledge prevent us from asserting any right under the terms of this policy.

**D. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be computed at ninety percent (90%) of pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**E. Duties In The Event Of Occurrence, Claim Or Suit**

You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place. The names and addresses of any injured persons and witnesses must be included.

If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

You and any other insured involved must:

1. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

2. Authorize us to obtain records and other information;

3. Cooperate with us in the investigation, settlement, or defense of the claim or suit; and

4. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.

**F.  Bankruptcy Of The Underlying Insurer –** In the event of the bankruptcy or insolvency of the insurer of any **underlying insurance**, the insurance afforded by this policy shall not replace such **underlying insurance**. Rather, this policy shall apply in the same manner as though such **underlying insurance** were available and collectible.

**G.  Maintenance Of Underlying Insurance –** You agree to maintain all **underlying insurance** in full force and effect as scheduled in the Schedule of Underlying Insurance at the inception of this policy and during our policy period except for reduction of aggregate limits of liability by payment of losses. If any **underlying insurance** is not maintained in full effect by the insured, or if there is any material change in the terms, conditions or scope of coverage, by endorsement or otherwise, of any **underlying insurance**, the insurance afforded by this policy shall apply in the same manner as though such **underlying insurance** had been in full effect, so maintained and unchanged. You agree to notify us promptly if any **underlying insurance** is cancelled or terminated.

**H.  Premium –** Premiums for this policy shall be stated in the Declarations and computed in accordance with our rules, rates, rating plans, premiums, and minimum premiums applicable to this insurance. If this policy is issued for a period in excess of one year, the premium for this policy may be revised on each annual anniversary. Any such revision will be in accordance with our manuals in effect at that time.

If the policy is issued on a non-auditable basis, the Flat Rate Premium becomes the policy premium.

If the policy is issued on an auditable basis, the premium designated on the Declarations page as Advance Premium shall be credited to the amount of earned premium due at the end of the policy period. At the close of each audit period, the earned premium shall be computed for such period. Upon notice to you, it shall become due and payable. If the total earned premium exceeds the Advance Premium previously paid, the amount by which the earned premium exceeds the Advance Premium shall be due and payable to us by you. In no case shall the earned premium be less than the Minimum Premium shown on the Declarations page.

You shall maintain records of such information as is necessary for premium computation. You shall send copies of such records to us at the end of this policy period. You shall also send us copies of such records at such times during the policy period as we may direct.

**I.  Legal Action Against Us –** No legal action shall be brought against us unless the insured has fully complied with all terms of this policy. In addition, no legal action shall be brought against us until the amount of the insured's obligation to pay has been finally determined. The insured's obligation to pay must be finally determined either by judgment against the insured after actual trial or by written agreement between us, the insured and the claimant.

**J.  Conformity –** Terms of this policy which are in conflict with the laws of the state wherein this policy is issued are hereby amended to conform to such laws.

**K.  Other Insurance –** If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance.

**L.  Subrogation –** In the event of any payment under this policy, the insured must notify us of any of the insured's rights of recovery against any person or organization. We shall be subrogated to all such rights. The insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by us, if there is no recovery, we will bear the expense thereof. If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by us before apportionment of such recovery as herein provided.

**M. Salvage –** All salvage, recoveries, or payments recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to such settlement. All necessary adjustments shall then be made between the insured and us. Nothing in this clause shall be construed to mean that losses under this policy are not recoverable until the insured's ultimate net loss has been finally ascertained.

**N. Inspection And Audit –** We shall be permitted but not obligated to inspect your property and operations at any time. Neither our rights to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of you or others, to determine or warrant that such property or operations are safe.

We may examine and audit your books and records at any time during the policy period and extensions thereof and within three (3) years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**O. Separation Of Insureds –** Except with respect to the limits of liability this insurance applies as if each Named Insured were the only Named Insured and separately to each insured against whom claim is made or suit is brought.

**P. Payment Of Loss –** It is a condition of this policy that the insurance afforded under this policy shall apply only after the underlying insurance has been exhausted by payment of its limits of liability. Upon final determination by settlement, award or verdict of the liability of the insured, we will promptly pay you as you shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by us within thirty (30) days after they are respectively claimed and proof of loss filed with us in conformity with this policy. Bankruptcy or insolvency of the insured shall not relieve us of any of our obligations hereunder.

Policy Number:     PSE0004386                                        RLI Insurance Company
Named Insured:     DeSimone Consulting Engineering DPC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® NAMED INSURED ENDORSEMENT

Named Insured includes the following entities in addition to the person or organization named in Item 1. of the Declarations:


S. DeSimone Consulting Engineers, LLC
DeSimone Consulting Engineering LLC

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                          RLI Insurance Company
Named Insured: DeSimone Consulting Engineering DPC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® NOTICE OF CANCELLATION OR NONRENEWAL – DESIGNATED PERSON OR ORGANIZATION

**Schedule**

Designated Person or Organization:
 As per schedule to be provided upon request

Email Address:

US Mail Address:
 CT

If we cancel or chose to nonrenew this policy for any reason other than nonpayment of premium we will provide written notice at least ( 30 ) days before the effective date of the cancellation or nonrenewal to the designated person or organization in the above schedule.

Such notice will be sent via the US mail address or E-mail address listed above. Proof of mailing or e-mailing will be sufficient proof of notice.

Policy Number:  PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to bodily injury, property damage, personal and advertising injury, or medical payments arising out of:

1. Asbestos, asbestos fibers or asbestos products or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such bodily injury, property damage, personal and advertising injury, or medical payments;

2. Any supervision, instructions, recommendations, notices, warnings, testing, monitoring or advice given or which should have been given in connection with the manufacturing, selling, renting, consulting, removal, demolition, and/or distributing of asbestos, asbestos fibers or asbestos products or products or premises containing asbestos;

3. Removal of asbestos or products containing asbestos including:

   a. Cost of asbestos removal and replacement with other fire retardant materials;

   b. Property damage in the course of removing asbestos, asbestos fibers or asbestos products.

4. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos, asbestos fibers, or asbestos products; or

5. Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of asbestos, asbestos fibers, or asbestos products.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to:

1. Bodily injury or medical payments arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. Property damage arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. Personal and advertising injury arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

"Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                                                         RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® FOR DESIGN PROFESSIONALS
# PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to bodily injury, property damage, personal and advertising injury, or medical payments arising out of the rendering or failure to render any "Professional Services".

"Professional Services" means any service requiring specialized skill or training including but not limited to the following:

**a.** Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor, subcontractor or subconsultant;

**c.** Monitoring, testing, or sampling service necessary to perform any of the services included in **a.** or **b.** above.

**d.** Legal, accounting or advertising services;

**e.** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**f.** Any health or therapeutic service treatment, advice or instruction;

**g.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**h.** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**i.** Body piercing services; and

**j.** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any "professional services".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® FOR DESIGN PROFESSIONALS
# PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to **ultimate net loss** arising out of the rendering or failure to render any **professional services**.

"Professional Services" means any service requiring specialized skill or training including but not limited to the following:

**a.** Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor, subcontractor or subconsultant;

**c.** Monitoring, testing, or sampling service necessary to perform any of the services included in **a.** or **b.** above.

**d.** Legal, accounting or advertising services;

**e.** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**f.** Any health or therapeutic service treatment, advice or instruction;

**g.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**h.** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**i.** Body piercing services; and

**j.** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any "professional services".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to bodily injury, property damage, personal and advertising injury, or medical payments arising out of:

1. The ingestion, inhalation or absorption of lead in any form or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such bodily injury, property damage, personal and advertising injury, or medical payments;

2. Any supervision, instructions, recommendations, notices, warnings, testing, monitoring or advice given or which should have been given in connection with the manufacturing, selling, renting, consulting, removal, demolition and/or distributing of lead or products or premises containing lead;

3. Removal of lead or products containing lead, including property damage in the course of removing lead;

4. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

5. Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® FOR DESIGN PROFESSIONALS
# EXCESS LIABILITY ENHANCEMENT

**SCHEDULE OF COVERAGES ADDRESSED BY THIS ENDORSEMENT**

A.  **General Aggregate Limit –  Per Project Or Per Location**
B.  **Additional Insured – Primary/Non-contributory**
C.  **Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.  General Aggregate Limit – Per Project Or Per Location**

Paragraph **2.a.** of **C. Limits of Liability** of **SECTION I – INSURING AGREEMENT** is deleted and replaced by the following:

**a.**  The limit of liability stated in the Declarations as general aggregate is the most we will pay during each policy period for all ultimate net loss, except ultimate net loss because of:

(1)  injury and damage included in the products-completed operations hazard or;

(2)  any coverage included in **underlying insurance** to which no underlying aggregate applies.

The general aggregate applies separately to each of your "projects" away from premises owned by or occupied by you or to each of your locations owned by or occupied by you.

"Projects" mean an area away from premises owned by or rented to you at which you are performing operations pursuant to a contract or agreement. For the purposes of determining the applicable aggregate limit of insurance, each "project" at the same "location" shall be considered a single "project".

For the purposes of this provision, "location" means

(1)  premises involving the same or connecting lots;

(2)  premises where connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; or

(3)  premises where operations are performed in sections, stages or phases as a continuation of the same contract or agreement, even if the premises do not involve connecting lots.

**B.  Additional Insured – Primary/Non-contributory**

Paragraph **K. Other Insurance** of **SECTION IV – CONDITIONS** is deleted and replaced by the following:

**K.  Other Insurance**

If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance. However, if the **underlying insurance** provides coverage to an additional insured on a primary basis, or a primary and non-contributory basis, this insurance shall be available to such additional insured on an excess basis over the underlying insurance. We will not share with other insurance which covers such additional insured as a named insured.

**C.  Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

Paragraph **L. Subrogation** of **SECTION IV – CONDITIONS** is deleted and replaced by the following:

**L. Subrogation**

In the event of any payment under this policy, the insured must notify us of any of the insured's rights of recovery against any person or organization. We shall be subrogated to all such rights. The insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.  However we waive any rights of recovery we may have against any person or organization if the **underlying insurance** also waives such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by us, if there is no recovery, we will bear the expense thereof. If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by us before apportionment of such recovery as herein provided.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                  RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK RLIPack FOR DESIGN PROFESSIONALS
# EXCESS LIABILITY ENHANCEMENT

## SCHEDULE OF COVERAGES ADDRESSED BY THIS ENDORSEMENT

A. **General Aggregate Limit –  Per Project Or Per Location**
B. **Additional Insured – Primary/Non-contributory**
C. **Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

A. **General Aggregate Limit – Per Project Or Per Location**

Paragraph **2.a.** of **C. Limits of Liability** of **SECTION I – INSURING AGREEMENT** is deleted and replaced by the following:

a. The limit of liability stated in the Declarations as general aggregate is the most we will pay during each policy period for all ultimate net loss, except ultimate net loss because of:

(1) injury and damage included in the products-completed operations hazard or;

(2) any coverage included in **underlying insurance** to which no underlying aggregate applies.

The general aggregate applies separately to each of your "projects" away from premises owned by or occupied by you or to each of your locations owned by or occupied by you.

"Projects" mean an area away from premises owned by or rented to you at which you are performing operations pursuant to a contract or agreement. For the purposes of determining the applicable aggregate limit of insurance, each "project" at the same "location" shall be considered a single "project".

For the purposes of this provision, "location" means

(1) premises involving the same or connecting lots;

(2) premises where connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; or

(3) premises where operations are performed in sections, stages or phases as a continuation of the same contract or agreement, even if the premises do not involve connecting lots.

B. **Additional Insured – Primary/Non-contributory**

Paragraph **K. Other Insurance** of **SECTION IV – CONDITIONS** is deleted and replaced by the following:

K. **Other Insurance**

If other valid and collectible insurance is available to the insured covering a loss also covered by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance. However, if the **underlying insurance** provides coverage to an additional insured on a primary basis, or a primary and non-contributory basis, this insurance shall be available to such additional insured on an excess basis over the underlying insurance. We will not share with other insurance which covers such additional insured as a named insured.

C. **Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

Paragraph **L. Subrogation** of **SECTION IV – CONDITIONS** is deleted and replaced by the following:

L. **Subrogation**

In the event of any payment under this policy, the insured must notify us of any of the insured's rights of recovery against any person or organization. We shall be subrogated to all such rights. The insured shall execute and deliver instruments and papers and do whatever else is necessary to

secure such rights. The insured shall do nothing after loss to prejudice such rights. However we waive any rights of recovery we may have against any person or organization if the **underlying insurance** also waives such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by us, if there is no recovery, we will bear the expense thereof. If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by us before apportionment of such recovery as herein provided.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® DISCRIMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to bodily injury, property damage, personal and advertising injury, or medical payments arising out of discrimination based on, but not limited to, race, color, creed, sex, religion, age, weight, national origin, gender, handicap, familial preference, or sexual preference.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® EMPLOYMENT PRACTICES LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to any liability or damages which arise out of any:

1. Refusal to employ

2. Termination of employment

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omission; or

4. Consequential bodily injury or personal and advertising injury as a result of **1.** through **3.** above.

This exclusion applies:

1. Whether the injury-causing event described in paragraphs **1.** though **3.** above occurs before, during or after employment of any person:

2. Whether the insured may be held liable as an employer or in any other capacity; or

3. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack<sup>®</sup> DAMAGE TO PREMISES RENTED TO YOU EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to damage to premises while rented to you or temporarily occupied by you with permission of the owner.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® UM/UIM EXCLUSION

This insurance does not apply to sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured auto or underinsured auto because of injuries sustained by the insured, caused by an accident and arising out of the ownership, maintenance or use of such auto.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® UNINSURED/UNDERINSURED MOTORISTS EXCLUSION

This insurance does not apply to sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured auto or underinsured auto because of injuries sustained by the insured, caused by an accident and arising out of the ownership, maintenance or use of such auto.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK RLIPack SUPPLEMENTARY UNINSURED/UNDERINSURED MOTORISTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

This insurance does not apply to sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured auto or underinsured auto because of injuries sustained by the insured, caused by an accident and arising out of the ownership, maintenance or use of such auto.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY (FOLLOWING FORM)
COMMERCIAL UMBRELLA LIABILITY
EXCESS UMBRELLA LIABILITY

**A.** With respect to any one or more **certified act of terrorism**, we will not pay any amounts for which we are not responsible under the terms of the Terrorism Risk Insurance Act, as amended ("Terrorism Risk Insurance Act"), due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** The following definition is added:

**1. Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the "Terrorism Risk Insurance Act." The "Terrorism Risk Insurance Act" sets forth the criteria for a **certified act of terrorism** including:

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** If aggregate insured losses attributable to acts of terrorism certified under the federal "Terrorism Risk Insurance Act" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the "Terrorism Risk Insurance Act," we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.** The terms and limitations of any terrorism endorsement or exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                                 RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK RLIPack EXCLUSION – SILICA

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III – EXCLUSIONS**:

This insurance does not apply to the deleterious health effects of silica for:

1. Bodily injury or medical payments arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. Property damage arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

"Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386 RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® FOREIGN TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Regardless of whether or not such coverage is afforded by any **underlying insurance**, this policy does not apply to **ultimate net loss** arising out of "Terrorism" outside the "Coverage Territory" described in this endorsement.

1. The following is added to **SECTION III. EXCLUSIONS**:

   **Terrorism**

   "Terrorism" includes but is not limited to:

   **A.** Acts or threatened acts of violence, hostility or criminal conduct by a foreign or domestic enemy, whether or not war has been declared;

   **B.** The disruption or threatened disruption of financial, governmental, transportation, communication, computer or utility services which appears to be for political, religious, economic, ecological or racial ends;

   **C.** The use or threatened use of force, violence or criminal conduct which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

   **D.** The use or threatened use of force, violence or criminal conduct for the apparent purpose of or with the result of harming or intimidating a civilian population;

   **E.** The use or threatened use of biological or chemical or nuclear substances for the apparent purpose of or with the result of harming or intimidating a civilian population;

   **F.** Any act or threatened act of force, violence or criminal conduct by any person or persons acting on behalf of or in connection with any organization with a stated goal of overthrowing or influencing the policy of any government, whether lawful or otherwise; or

   **G.** Any act or threatened act of force, violence or criminal conduct which has been labeled, identified or described as a terrorist act by the executive branch of the United States government.

2. For the purposes of this endorsement the following definition of "Coverage Territory" applies:

   "Coverage Territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada; or

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386 RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® VALUATION AND CURRENCY

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION IV. P. Payment Of Loss**:

All **ultimate net loss**, amounts due under Section I B. Defense And Expense Of Claims And Suits, or other currency amounts under this policy are expressed and payable in the currency of the United States of America.

We will pay in United States dollars at the rate of exchange published in The Wall Street Journal on the date of settlement, award or verdict of the liability of the insured.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386                                        RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® WAR EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **SECTION III. EXCLUSIONS**:

**War**

Regardless of whether or not such coverage is afforded by any **underlying insurance**, this policy does not apply to:

**Ultimate net loss** however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following is added to **Section III. Exclusions:**

**AIRCRAFT**

Regardless of whether or not such coverage is afforded by any **underlying insurance,** this policy does not apply to **ultimate net loss,** however caused, arising directly or indirectly out of the ownership, maintenance, use or entrustment to others of any aircraft, including unmanned aircraft.

This exclusion applies even for **ultimate net loss** due to negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured if the occurrence which caused the **ultimate net loss** involved the ownership, maintenance, use or entrustment to others of any aircraft, including unmanned aircraft.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number:  PSE0004386                                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Regardless of whether or not such coverage is afforded by any **underlying insurance**, this policy does not apply to **ultimate net loss** arising out of Terrorism outside the coverage territory described in this endorsement.

1.  The following is added to **SECTION III. EXCLUSIONS**:

    **Terrorism**

    **Ultimate net loss** arising, directly or indirectly, out of an **other act of terrorism** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the coverage territory. However, this exclusion applies only when one or more of the following are attributed to such act:

    1.  The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

    2.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

        a.  Physical injury that involves a substantial risk of death; or

        b.  Protracted and obvious physical disfigurement; or

        c.  Protracted loss of or impairment of the function of a bodily member or organ; or

    3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

    4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

    With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.  The following definitions are added:

    1.  **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

        a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

        b.  The act resulted in damage:

            (1)  Within the United States (including its territories and possessions and Puerto Rico); or

            (2)  Outside of the United States in the case of:

                (a)  An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

    **(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**2. Other act of terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an **other act of terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for "injury or damage" that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Policy Number:** PSE0004386                                        **RLI Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES

This endorsement modifies insurance provided under the following:

COMERCIAL EXCESS LIABILITY COVERAGE FORM

**A. Section IV – Conditions** is amended as follows:

1. Paragraph **D. Cancellation** is replaced by the following:

   **D. Cancellation**

   1. The Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2. **Cancellation Of Policies In Effect For Less Than 60 Days**

      If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

      **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   3. **Cancellation Of Policies In Effect For 60 Days Or More**

      **a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         **(a)** Nonpayment of premium;

         **(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

         **(c)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim under the policy;

      **(d)** Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

      **(e)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

      **(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         **(a)** Physical changes in the property which increase the hazard insured against;

         **(b)** A material increase in the hazard insured against; or

         **(c)** A substantial loss of reinsurance by us affecting this particular line of insurance.

      **b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.**

      **c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

      **d.** Notice of cancellation will be sent or delivered by:

         **(1)** Registered mail;

         **(2)** Certified mail; or

         **(3)** Mail evidenced by a United States Post Office certificate of mailing.

   4. We will give notice to you at your last mailing address known to us.

5. Notice of cancellation will state the specific reason for the cancellation and the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. Notice of cancellation will state that the excess premium (if not tendered) will be refunded on demand.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The following paragraph is added and supersedes any provision to the contrary:

**Q. Nonrenewal**

1. If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the specific reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

2. This notice will be delivered or sent by:

   **a.** Registered mail;

   **b.** Certified mail; or

   **c.** Mail evidenced by a certificate of mailing.

   If notice is mailed, proof of mailing is sufficient proof of notice.

3. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

Policy Number:  PSE0004386

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMERCIAL EXCESS LIABILITY COVERAGE FORM

**A. Section IV – Conditions** is amended as follows:

1. The following replaces Paragraph **D.2. Cancellation**:

   2. **Cancellation Of Policies In Effect**

      a. **For 90 Days Or Less**

         If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

         (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

         (2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            (a) A material misstatement or misrepresentation; or

            (b) A failure to comply with underwriting requirements established by the insurer.

      b. **For More Than 90 Days**

         If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

         (1) Nonpayment of premium;

         (2) The policy was obtained by a material misstatement;

         (3) There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

         (4) There has been a substantial change in the risk covered by the policy;

         (5) The cancellation is for all insureds under such policies for a given class of insureds;

   If we cancel this policy for any of these reasons, we will mail or deliver to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   (a) 10 days before the effective date of cancellation if cancellation is for non-payment of premium; or

   (b) 45 days before the effective date of cancellation if we cancel for any of the reasons stated in Paragraph **2.b.**

2. Paragraph **D.5. Cancellation** is replaced by the following:

   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

PPU 409 05 12

Page 1 of 2

**3.** The following Paragraphs are added:

**M. Nonrenewal**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Policy Number:  PSE0004386                                                    **RLI Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

RLIPack COMMERCIAL EXCESS LIABILITY POLICY FORM

**Section IV – Conditions, D. Cancellation**, is deleted in its entirety and replaced as follows:

**D. Cancellation And Nonrenewal**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering written notice of cancellation, stating the reason for such cancellation, to the first Named Insured, at the last mailing address known to us, and to the agent or broker of record, if any.   Notice of cancellation shall be mailed or delivered at least:
   a. Ten (10) days before the effective date of cancellation if we cancel at any time for nonpayment of premium;
   b. Thirty (30) days before the effective date of cancellation if we cancel for any reason other than nonpayment of premium and the policy has been in effect for sixty (60) days or less; or
   c. Sixty (60) days before the effective date of cancellation if we cancel for any reason other than nonpayment of premium and the policy has been in effect for sixty-one (61) days or more.

3. After this policy has been in effect for sixty (60) days it may be cancelled only for any of the following reasons:
   a. nonpayment of premium;
   b. the policy was obtained through a material misrepresentation;
   c. any Insured's violated any of the terms and conditions of the policy;
   d. the risk originally accepted has measurably increased;
   e. certification to the Director of Insurance of the loss of reinsurance by us which provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. a determination by the Director of Insurance that the continuation of the policy could place us in violation of Illinois insurance laws.

4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund will be computed at ninety percent (90%) of pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If we intend not to renew this policy we shall mail or deliver written notice of nonrenewal, stating the reason for such nonrenewal, to the first Named Insured, at the last mailing address known to us, and to the agent or broker of record, if any, at least sixty (60) days before the effective date of the nonrenewal.  Proof of mailing such notice shall be sufficient proof of notice.  This provision does not apply if we have manifested our willingness to renew directly to the first Named insured.

8. If upon renewal of this policy, we intend to increase the premium by thirty percent (30%) or more, or impose changes in deductibles or coverage that materially alter the policy, we shall mail or deliver to the first Named insured, and to the agent or broker of record, if any, written notice of such increase or change at least sixty (60) days in advance of the renewal date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Policy Number: PSE0004386 RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A. Section IV – Conditions** is amended as follows:

   **1.** The following paragraph is added and supersedes any provisions to the contrary:

      **Q. Nonrenewal**

      This provision applies to coverage on real property which is used predominantly for residential purposes and consists of not more than four dwelling units, and to coverage on personal property of a person residing in such real property.

      **1.** Ordinarily we will renew this policy automatically and send you the renewal notice. Our notice will explain what you should do if you do not want to continue this policy.

      **2.** We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your last mailing address shown in the Declarations, written notice of non-renewal, accompanied by the specific reasons for nonrenewal, at least 45 days before the expiration date of this policy. However, if your policy was executed on behalf of us, in whole or in part, by or on behalf of your insurance agent or our insurance broker, we will send such written notice only to the agent or broker. Every insurance agent or broker receiving this notice is required to, within 15 days of its receipt, send a copy to you unless the agent or broker has replaced the insurance.

Policy Number: PSE0004386                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**B. Section IV – Conditions** is amended as follows:

1. The following replaces Paragraph **D.2. Cancellation**:

   **2. Cancellation Of Policies In Effect**

   **a. For Less Than 70 Days**

   If this policy has been in effect for less than 70 days:

   **(i)** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(a)** Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(b)** Thirty (30) days before the effective date of cancellation it we cancel for any other reason.

   **b. For 70 days or more**

   If this policy has been in effect for 70 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

   **(i)** Nonpayment of premium;

   **(ii)** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

   **(iii)** Discovery of fraud or material misrep-resentation in obtaining the policy or in presenting a claim thereunder;

   **(iv)** Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and sub-stantially and materially increases the hazard insured against;

   **(v)** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   **(vi)** A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

   **(vii)** A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

2. The following paragraphs are added:

   **Q. Nonrenewal**

   1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

      If this policy has been issued to a condominium association, we will also mail or deliver the written notice of nonrenewal to each unit-owner and each holder of a security interest to whom we issued a certificate or memorandum of insurance.

   2. We need not provide this notice if:

      **a.** You have accepted replacement coverage;

      **b.** You have requested or agreed to nonrenewal; or

      **c.** This policy is expressly designated as nonrenewable.

PPU 427 05 12                                                  Page 1 of 2

**R. Notices**

    **1.** Notice of cancellation or nonrenewal will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state:

        **a.** The specific reason for cancellation or nonrenewal; and

        **b.** The effective date of nonrenewal.

    **2.** We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

Policy Number:  PSE0004386

**RLI Insurance Company**
Peoria, Illinois 61615

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RLIPack® STATE OF NEW YORK
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

In accordance with the laws and regulations of the State of New York, the policy is amended, as of its effective date, as follows:

**A.** The following changes are made to **SECTION I – INSURING AGREEMENT**:

   **1.** Subparagraph **(b)** in **A. Coverage** of **Section I – Insuring Agreement** is amended to;

      **(b)** only after the underlying insurance policy limits have been exhausted by obligation to pay the limits of liability of such insurance for judgments or settlements; and

   **2.** Paragraph **B.1.** is replaced in its entirety as follows:

      **1.** We will have the right and duty to defend the insured with respect to claims that are covered by this policy when the limits of underlying insurance have been exhausted. When we have no duty to defend, we will have the right and opportunity to defend, or to participate in the defense of the insured with respect to claims to which this insurance may apply. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted. However, we will have no duty to defend the insured against any claims to which this insurance does not apply.

   **3.** Paragraph **B.3.a.** is deleted.

**B.** The following provision is added to Paragraph **C. Workers Compensation And Similar Laws** of **Section III – Exclusions:**

   In situations where an employee is subject to the New York Worker's Compensation Law, because Employer's Liability Coverage is generally unlimited in nature in New York State.

**C.** The following changes are made to **SECTION IV – CONDITIONS**:

   **1.** **D. Cancellation** is replaced in its entirety as follows:

   **D. Cancellation And Nonrenewal**

      **1.** The first Named Insured shown in the Declaration may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

      **2.** If this policy has been in effect less than sixty (60) days, and is not a renewal, we may cancel for any sound underwriting reason by mailing a notice to the first Named Insured and to his authorized agent or broker within this period. If we cancel during this period, we will mail at least thirty (30) days notice. If we cancel during this period for a specific reason that is itemized in Paragraph **3.** below, we will send fifteen (15) days notice of cancellation. If notice is for nonpayment of premium, however, that notice of cancellation shall inform the first Named Insured of the amount due.

      **3.** If this policy has been in effect sixty (60) days or more or is a renewal, we can only cancel it during the policy period for any of the following reasons:

         **a.** if the first Named Insured fails to pay any premium when due provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

    **b.**  if any insured is convicted of a crime that results from acts that increase the chance of loss;

    **c.**  if the policy was obtained through fraud or misrepresentation of any material fact or if there is a misrepresentation of a material fact while presenting a claim hereunder;

    **d.**  if after issuance of the policy or after the last renewal date, we discover an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

    **e.**  if a material change in the nature or extent of the risk occurs after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed; or

    **f.**  if required pursuant to a determination by the Superintendent of Insurance that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public or would violate any provision of the Insurance Code;

If we cancel for any of these reasons, we will send the first Named Insured, and to the authorized agent or broker, a notice of cancellation at least fifteen (15) days before coverage will end. The notice will state the reasons for cancellation.

**4.**  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**5.**  If we decide not to renew this policy, we will mail or deliver a written notice of nonrenewal to the first Named Insured,and to the authorized agent or broker, at their last mailing address known to us. We will mail or deliver this nonrenewal notice at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration date of the policy. But we will not send this notice if the first Named Insured has told us that the policy has been replaced or is no longer needed.

**6.**  If we renew or continue this policy based on any of the following conditions:

    **a.**  a change in limits of liability;

    **b.**  a change in the type of coverage;

    **c.**  reduced coverage;

    **d.**  a higher deductible;

    **e.**  any additional exclusions; or

    **f.**  a premium increase of more than ten percent (10%);

We will send a notice of renewal stating the reasons and the change at least sixty (60) days, but not more than one hundred twenty (120) days before the expiration date of the policy, to the first Named Insured.

**7.**  Upon written request, we shall mail or deliver the following loss information covering a period of years specified by the Superintendent of Insurance by regulation or the period of time coverage has been provided by us, whichever is less, to the first Named Insured, or its authorized agent or broker, within ten (10) days of mailing or delivery of such request by the first Named Insured:

    **a.**  Information on closed claims, including date and description of occurrence, and any incurred losses;

    **b.**  Information on open claims, including date and description of occurrence, and amounts of any payments; and

    **c.**  Information on notice of any occurrences, including date and description of occurrence.

**8.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.**  The following is added to Paragraph **E. Duties In The Event Of Occurrence, Claim Or Suit**:

Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

3.   **I. Legal Action Against Us** is replaced in its entirety as follows:

   **I.   Legal Action Against Us**

   **1.**   Except as provided in Paragraph **2**. no person or organization has a right under this Coverage Part:

   **a.**   To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

   **b.**   To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

   **2.**   With respect to claims that are covered by the policy, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

   However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

   **a.**   Brings an action to declare the rights of the parties under the policy; and

   **b.**   Names the injured person, someone acting for the injured person or other claimant as a party to the action.

4.   The following paragraph is added to **J. Conformity**;

   It is understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as afforded in this policy, the terms of this policy as respects coverage for operations in the State of New York, shall conform to the coverage requirements of the applicable insurance laws of the State of New York, or the applicable regulations of the New York Insurance Department; provided, however, that our limit of liability as stated in this policy shall be excess of the limits of liability of any **underlying insurance**.

5.   Paragraph **K. Other Insurance** is replaced in its entirety as follows:

   **K.   Other Insurance** – If other valid and collectible insurance is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and not contribute with, such other insurance.

6.   Paragraph **P. Payment Of Loss** is replaced in its entirety as follows:

   **P.   Payment Of Loss –** It is a condition of this policy that the insurance afforded under this policy shall apply only after the underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the insured, we will promptly pay you as you shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by us within thirty (30) days after they are respectively claimed and proof of loss filed with us in conformity with this policy. Bankruptcy or insolvency of the insured shall not relieve us of any of our obligations hereunder.

7.   The following provision is added and supersedes any provision to the contrary:

   **Q.**   Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: PSE0004386

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**C. Section IV – Conditions** is amended as follows:

1. Paragraph **D.2. Cancellation** is replaced by the following:

   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

      a. If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official;

      b. If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

         (1) Fraud in obtaining coverage;

         (2) Failure to pay premiums when due;

         (3) An increase in hazard within the control of the insured which would produce an increase in rate;

         (4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

         (5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

2. The following paragraph is added and supersedes any provision to the contrary:

   **Q. Nonrenewal**

   1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

   2. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

   3. If notice is mailed, proof of mailing will be sufficient proof of notice.

   4. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

Policy Number: PSE0004386                                                                 RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY
COMMERCIAL EXCESS UMBRELLA LIABILITY
RLIPACK® COMMERCIAL EXCESS LIABILITY

Any endorsement addressing acts of **terrorism** (however defined) in any **underlying insurance** does not apply to this excess insurance. The following provisions addressing acts of **terrorism** apply with respect to this excess insurance.

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make **terrorism** coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for **terrorism** losses. (That deductible determines the amount of all certified **terrorism** losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified **terrorism** losses.); or

      (2) Decrease the federal government's statutory percentage share in potential **terrorism** losses above such deductible; or

      (3) Redefine **terrorism** or make insurance coverage for **terrorism** subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any **terrorism** endorsement already endorsed to this policy that addresses **certified acts of terrorism** and/or other acts of terrorism, but only with respect to an incident(s) of **terrorism** (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims-made policies, such an endorsement is superseded only with respect to an incident of **terrorism** (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any **terrorism** endorsement already endorsed to this policy, that addresses **certified acts of terrorism** and/or other acts of terrorism, will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**B.** The following definition is added and applies under this endorsement wherever the term **terrorism** is in boldface type:

**Terrorism** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for **ultimate net loss** resulting from injury or damage caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. **Ultimate net loss** resulting from injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

1. The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

3. The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **C.5.** or **C.6.** are exceeded.

With respect to this exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism**, there is no coverage under this Coverage Part.

In the event of any incident of **terrorism** that is not subject to this exclusion, coverage does not apply to injury or damage that is otherwise excluded under this Coverage Part.

Policy Number: PSE0004386                                                    RLI Insurance Company

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary                                    President & COO

ILF 0001C (04/16)